## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY JUSTICE and 5TH WHEEL RECORDS, INC., *each individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>UNCHARTED LABS, INC., d/b/a Udio.com.,<br><br>Defendant | Case No. 1-25-cv-5026<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Anthony Justice and 5th Wheel Records, Inc. (collectively "Plaintiffs"), each individually and on behalf of all others similarly situated, by and through their undersigned counsel, file this Complaint against Uncharted Labs, Inc. d/b/a Udio.com ("Udio") and allege as follows:

### NATURE OF THE ACTION

1.      On June 24, 2024, the world's largest record labels, UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Arista Music, Arista Records LLC, Atlantic Recording Corporation, Rhino Entertainment Company, Warner Music Inc., Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, and Warner Records/SIRE Ventures LLC, filed a lawsuit[1] against Udio in the United States District Court for the Southern District of New York (the "Lawsuit"), alleging copyright infringement for willfully using copyrighted sound recordings (hereafter "music" or "songs") to train Udio's artificial intelligence

---

[1]    *See UMG Recordings, Inc. v. Uncharted Labs, Inc.*, No. 24-04777, Complaint, Doc. No. 1 (S.D.N.Y., Filed June 24, 2024).

("AI") music generator.

2.      While this high-profile Lawsuit continues to draw attention in the fight to protect major label music, independent artists, whose rights have been trampled the most, are the ones left without a seat at the table, unrepresented, and without a meaningful remedy.

3.      Udio admits in its Answer to the Lawsuit that its AI music generator is trained using "publicly available" sources.[2] Independent artists such as Plaintiffs and Class Members (as defined herein) are the majority of the owners and controllers of music that is publicly available on streaming services. Udio's actions were not only unlawful, but an unconscionable attack on the music community's most vulnerable and valuable creators.

4.      Independent artists, Plaintiffs, and Class Members will never be able to claw back the intellectual property unlawfully copied by Udio and used to train its AI. Once AI ingests copyrighted music, those songs are stored in its neural network, and not capable of deletion or retraction. These acts by Udio were abuse and exploitation of the worst kind of copyrighted songs owned by independent artists, Plaintiffs, and Class Members. Rather than simply license these copyrighted songs like every other tech-based business does, Udio elected to simply steal the songs and generate AI-soundalike music at virtually no cost to Udio.

5.      Udio, as part of its answer in the Lawsuit, argues that despite clear copyright infringement of independent artist's music, the doctrine of fair use, a defense to copyright infringement pursuant to 17 U.S.C. § 107, shields Udio from any liability.

6.      The most relevant and influential agency in the United States as it relates to matters concerning copyright, the U.S. Copyright Office, recently undertook to research and analyze the issue of whether the training of artificial intelligence on copyrighted works qualifies as fair use.

---

[2]      *See UMG Recordings, Inc. v. Uncharted Labs, Inc.*, No. 24-04777, Answer of Defendant Uncharted Labs, Inc. to Complaint at p. 9, ¶¶ 41, 43, Doc. No. 26  (S.D.N.Y., Filed Aug. 1, 2024)

7.      In resounding alignment with the protection of independent artist rights, the U.S. Copyright Office released its report: Copyright and Artificial Intelligence, Part 3: Generative AI Training (the "Report") in May of 2025. Notably, in the Report, the Copyright Office emphasized that the fair use doctrine does not excuse unauthorized training on expressive works (e.g., music) particularly when those works are used to generate substitutional outputs that may replace the originals in the relevant marketplace. Report at 107-108.

8.      Meaning, Udio training its AI model on the copyrighted songs of independent artists, Plaintiffs and Class Members, without authorization, to then create competing music in the exact same marketplace, is unlikely fair use, and therefore, is prima facie copyright infringement.

9.      Not only does a robust and long-used licensing system exist today for businesses like Udio to utilize, but independent artists heavily rely on licensing, streaming, and synchronization opportunities to monetize their music. As just one example, and for last year alone, Spotify reported paying ten billion (10,000,000,000) dollars in music royalties to artists and rightsholders, a large portion of said royalties belonging to independent artists, according to Spotify.[3] Udio's unauthorized uses undermine the existing streams of revenue, including licensing markets, for independent music, which the Copyright Office itself recognized as valid and protectable under copyright law. See Id. at 107.

10.     Plaintiff Anthony Justice ("Plaintiff Justice") is an independent country music artist, selling over 100,000 albums and earning over 21,000,000 YouTube views. Plaintiff Justice has additionally amassed a substantial following on social media platforms as he has invested substantial time and money into bringing awareness around his music.

11.     Plaintiff Justice has received millions of streams on his songs on music platforms

---

[3]     Loud and Clear Economics Report, March of 2025: https://loudandclear.byspotify.com/.

such as Spotify, such as his hit song "Last of the Cowboys" which has already received over eight million (8,000,000) streams.

12.  Plaintiff Justice has incredibly built a sustainable career even while serving as a full-time truckdriver in the United States. Plaintiff Justice's independently created songs have not only resonated with millions of listeners but are valuable intellectual property belonging exclusively to Plaintiff Justice.

13.  Plaintiff 5th Wheel Records, Inc. ("5th Wheel Records"), is a recording company owned and operated by Plaintiff Justice. To better protect his intellectual property, many of Plaintiff Justice's songs are registered under his music business entity, 5th Wheel Records.

14.  Plaintiffs own, hold or exclusively control copyrights in a significant number of commercially valuable songs. Plaintiffs have developed their musical catalogs through the creation and promotion of Plaintiff Justice's songs. Plaintiffs not only monetize their songs but also look for voluntary free-market licensing opportunities as part of their music business operations.

15.  Like Plaintiffs, the Class Members in this case are independent recording artists and entities owned or controlled by such independent recording artists who hold U.S. copyright registrations for songs licensed on music streaming services. Class Members own, hold, or exclusively control copyrights for their songs.

16.  Defendant Udio is a generative AI service that creates digital music based on user prompts. Although Udio makes a certain, limited amount of free use available to users. Udio charges many of its users monthly fees for increased use of its website platform Udio.com, which includes accessibility from a mobile application (collectively hereafter the "Udio Website"), and which produces digital music files designed to mimic human-made songs (hereafter "AI Music").

17.  Udio has effectively admitted willful copyright infringement on a massive scale. In

response to the Lawsuit, Udio callously admits to training its AI model on "publicly available" music. Publicly available music encompasses a large volume, if not by far the majority, the music of independent artists, including the copyrighted music of Plaintiffs and Class Members.

18.    "Publicly available" music platforms include music platforms like Spotify, YouTube, and SoundCloud, as well as other platforms that may require Udio to bypass a paywall, such as Tidal. Plaintiffs' copyrighted songs can be found on all major music streaming platforms, as well as through Plaintiffs' own website, tonyjustice.com (the "Justice Website"). The Class Members also have songs on these platforms.

19.    Upon information and belief, Udio copied Plaintiffs' copyrighted songs, along with copyrighted songs belonging to the Class Members, and ingested them into its AI model. Without the unlawful copying of Plaintiffs' and the Class Members' songs and ingesting them into its AI model, Udio's service would not be able to produce the product that the Udio Website offers today to tens of millions of users.

20.    Udio's AI specifically trains on the expressive features (i.e., the emotional and passionate aspects) of these copyrighted songs for the ultimate purpose of usurping the listeners, fans, and potential licensees of the songs it copied.

21.    Upon information and belief, Udio used and/or accessed streaming services on which Plaintiffs and Class Members had licensed their copyrighted songs to illegally copy and reproduce Plaintiffs' and Class Members' songs for purposes of training its generative AI model.

22.    Upon information and belief, over one year ago Udio's program was already creating ten (10) tracks a second—more than six million (6,000,000) songs per week—through Udio's many users.[4] Udio never even attempted to seek permission from and give credit to the

---

[4]    *See* Music Business Worldwide, *The Train Has Left the Station: AI Music Platform Udio Is Already Spitting Out 10 Songs a Second*, May 13, 2024, https://www.musicbusinessworldwide.com/the-train-has-left-the-

millions of independent artists and other rightsholders whose works make the Udio Website even possible, including Plaintiffs and Class Members.

23.     Udio profits substantially from its infringement of Plaintiffs' and Class Members' copyrighted songs. Udio has secured Ten Million Dollars ($10,000,000.00) from investors,[5] with user subscription tiers as high as Twenty-Four Dollars ($24.00) per month for its highest subscription tier. That massive financial success would not have been possible without the independent artist songs that Udio copied to train its AI model, including copyrighted songs owned by Plaintiffs and Class Members.

24.     As discussed, Udio cannot avoid liability for its willful copyright infringement by claiming fair use. This doctrine allows for the unlicensed (i.e. illegal) use of copyrighted works in very limited circumstances, none of which apply to Udio, even according to the U.S. Copyright Office.

25.     Plaintiffs bring this action on behalf of themselves and the Class Members seeking an injunction and damages commensurate with the scope of Udio's massive and ongoing infringement.

## THE PARTIES

26.     Plaintiff Justice is an independent country music artist who resides in the State of Tennessee.

27.     Plaintiff Justice is engaged in the business of creating, producing, manufacturing, distributing, selling, licensing, and otherwise commercializing his own original sound recordings in the United States and the world through various media.

---

station-ai-music-platform-udio-is-already-spitting (last viewed June 13, 2025).
    5     *See* Music Business Worldwide, *Labels in Licensing Talks with AI Music Generators Suno and Udio (Report)*, June 2, 2025, https://www.musicbusinessworldwide.com/universal-warner-and-sony-in-talks-to-license-ai-music-generators-suno-and-udio-report (last viewed June 13, 2025)

28.    5th Wheel Records is a Tennessee corporation in good standing with a principal office at 262 W. Broadway Blvd., Jefferson City, Tennessee 37760-2313.

29.    Plaintiffs hold copyrights to sound recordings that Plaintiff Justice created. As a holder of sound recording copyrights, Plaintiffs have exclusive control over rights in their copyrighted sound recordings, which have significant economic value. A non-exhaustive list of specific sound recordings owned or exclusively controlled by Plaintiffs that Udio has, upon information and belief, illegally copied and reproduced is attached as Exhibit A.

30.    Plaintiffs currently commercially exploit, and at all relevant times have commercially exploited, all the sound recordings listed in Exhibit A.

31.    Defendant Uncharted Labs, Inc. d/b/a Udio is a Delaware corporation with its principal place of business at 750 Lexington Avenue, Floor 9, New York, New York 10022.

## JURISDICTION AND VENUE

32.    This is a civil action seeking damages and injunctive relief for infringement under the Copyright Act, 17 U.S.C. §§ 101, et seq., and the Music Modernization Act, 17 U.S.C. § 1401. As such, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), based on federal question jurisdiction.

33.    This Court has personal jurisdiction over Defendant Udio because its principal place of business, listed as 750 Lexington Avenue, Floor 9, New York, New York 10022, is located within this district.

34.    Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Udio resides in this district.

## FACTUAL BACKGROUND

35.    Plaintiffs own or exercise exclusive control over copyrights and/or exclusive rights under federal law in and to numerous valuable songs. **Exhibit A**, attached hereto and incorporated

herein by reference, contains a non-exhaustive, representative list of copyrighted sound recordings owned or exclusively controlled by Plaintiffs that Udio has directly infringed (the "Copyrighted Recordings").

36.    As a musical artist, Plaintiff Justice has invested years cultivating an all-American unique image, musical style and lyrical form that has garnered a large and loyal fan base. Plaintiff Justice is even credited as creating a new genre of "trucker music."

37.    Plaintiffs have made substantial investments in the creation, development and promotion of their musical catalogs and styles.

38.    Like Plaintiffs, the Class Members are music recording artists who own or exercise exclusive control over their copyrights and/or exclusive rights under federal law in and to countless songs.

39.    Like Plaintiffs, the Class Members have licensing deals and have invested in the creation, development and promotion of their music catalogs and brands.

40.    Upon information and belief, and consistent with the basic facts of how generative AI works, the content Udio used to "train" its AI model includes Plaintiffs' copyrighted songs, as well as copyrighted songs belonging to the Class Members, that Udio reproduced without permission from Plaintiffs and the Class Members.

41.    Udio could *not* have built a model capable of "look-alike" songs so similar to Plaintiffs' copyrighted songs and the copyrighted recordings of the Class Members without the initial act of copying those recordings.

42.    Since the launch of the Udio Website, many allegations have arisen of Udio AI songs resembling or otherwise almost exactly mimicking Plaintiff's and/or the Class Members' copyrighted songs, evidencing that such songs were included in its training data.

43.     Because of their sheer popularity and exposure, Plaintiff's copyrighted songs and the copyrighted songs of the Class Members had to be included within Udio's training data for Udio's model to be successful at creating the desired human-sounding AI Music outputs.

44.     As noted above, Udio has effectively admitted that its generative AI model was trained on Plaintiffs' and Class Members' copyrighted music, because Udio's training materials were sourced from "publicly available" music streaming platforms and/or websites.

45.     Plaintiffs' copyrighted songs and the copyrighted songs of the Class Members were all available on the streaming services and/or websites utilized by Udio's model for training purposes, meaning, the songs of independent artists, including the songs of Plaintiffs and the Class members were, by Udio's own admissions, without question used in the training of Udio's model.

46.     Udio's unlawful copying of Plaintiffs' copyrighted songs and the copyrighted songs of the Class Members into its training data has not been lost on even "free" users of Udio's product.

47.     For clarification, Udio offers both free and paid versions of its AI Music. According to Udio's terms of service on the Udio Website, both free and paid users can use the AI Music for commercial purposes without restriction, with an additional requirement for free users to give credit to Udio.[6]

48.     The fact that Udio's AI Songs mimic the copyrighted songs supports the conclusion that Udio is using the copyrighted songs in training its AI model. These outputs evidence Udio copied copyrighted songs belonging to independent artists, Plaintiffs, and the Class Members into its training data to build its service.

### The United States Copyright Office Report

---

[6]     Udio Website, *Pricing* (June 30, 2024), https://www.udio.com/pricing (last viewed June 13, 2025); Udio Website, *Terms of Service*, ¶ 6.4 (Last Revised on May 16, 2025), https://www.udio.com/terms-of-service (last viewed June 13, 2025).

49.    As noted, the United States Copyright Office recently released its Pre-Publication Version of its Report on generative AI training in May of 2025.[7]

50.    The United States Copyright Office administers the nation's copyright laws and through its work, the United States Copyright Office "is committed to helping fulfill copyright's Constitutional purpose and to promote creativity and free expression for the benefit of all."[8]

51.    "The Register of Copyrights is the principal advisor to Congress on national and international copyright matters, testifying upon request and providing ongoing leadership and impartial expertise on copyright law and policy."[9]

52.    The Report indicates that Udio's use of Plaintiffs' and the Class Members' copyrighted songs violates copyright protections.

53.    Specifically, the Report states that "The steps required to produce a training dataset containing copyrighted works clearly implicate the right of reproduction." Report at 26.

54.    One of the steps in the process of creating Udio's generative AI model involved copying the copyrighted songs of Plaintiffs and the Class Members into the generative AI model. With respect to this copying, the Report states, "Developers make multiple copies of works by downloading them; transferring them across storage mediums; converting them to different formats; and creating modified versions or including them in filtered subsets.

55.    In many cases, the first step is downloading data from publicly available locations, but whatever the source, copies are made—often repeatedly." *Id*.

56.    According to the Report, "Most commenters agreed with or did not dispute that

---

[7] United States Copyright Office, *Copyright and Artificial Intelligence, Part 3: Generative AI Training*, https://www.copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-3-Generative-AI-Training-Report-Pre-Publication-Version.pdf (last viewed June 11, 2025)

[8]    United States Copyright Office, "About," https://www.copyright.gov/about/ (last viewed June 11, 2025).

[9]    *Id*.

copying during the acquisition and curation process implicates the reproduction right." *Id.* at 27.

57.    Udio used the copyrighted songs of Plaintiffs and the Class Members to train its generative AI model. With respect to training and whether this creates a claim for copyright infringement, the Report states, "The training process also implicates the right of reproduction. First, the speed and scale of training requires developers to download the dataset and copy it to high-performance storage prior to training. Second, during training, works or substantial portions of works are temporarily reproduced as they are 'shown' to the model in batches. Those copies may persist long enough to infringe the right of reproduction, depending on the model at issue and the specific hardware and software implementations used by developers. Third, the training process—providing training examples, measuring the model's performance against expected outputs, and iteratively updating weights to improve performance—may result in model weights that contain copies of works in the training data. If so, then subsequent copying of the model weights, even by parties not involved in the training process, could also constitute prima facie infringement." *Id.* at 27–28.

58.    Meaning, the process in which Udio's AI model trains, through the reproduction and copying of existing copyrighted songs, constitutes prima facie copyright infringement.

59.    With respect to similarities between Udio's AI Music that are similar to copyrighted songs, the Report states that a "lookalike" end product evinces that the generative AI model is in fact storing and utilizing the copyrighted songs. This matters for music creators who never gave permission to Udio, because their songs are now stored in the neural network of Udio's AI, and cannot be retrieved, deleted, or scrubbed from Udio's use.

60.    The Report goes on to note that "a specific model can generate verbatim or substantially similar copies of a training example, without that expression being provided

externally in the form of a prompt or other input, it must exist in some form in the model's weights." *Id.* at 28. Meaning, AI, without robust filters, can and has replicated with near exactness copies of copyrighted songs, even with limited prompts or inputs by a Udio user. This was also evidenced in thousands of instances by the major labels in their pending Lawsuit against Udio.

61.    In the Report, the Copyright Office opined that "[t]here is a strong argument that copying the model's weights implicates the right of reproduction for the memorized examples. Like other digital files that encode or compress content using mathematical representations, the content need not be directly perceivable to constitute a copy." *Id.* Moreover, the Report states, "Since model weights are lists of numbers that do not change (barring further training), they are fixed, and because memorized works can be generated and displayed using software, those works can be perceived or reproduced with the aid of a machine." *Id.* at 28–29.

62.    When a generative AI model such as Udio's produces "near exact replicas" of sound recordings, the Report states "[s]uch outputs likely infringe the reproduction right and, to the extent they adapt the originals, the right to prepare derivative works." *See Id.* at 31.

63.    The Report concluded by emphasizing that the fair use doctrine *does not* excuse unauthorized training on expressive works (e.g., music) *particularly when those works are used to generate substitutional outputs* that may replace the originals in the relevant marketplace. *Id.* 107-108.

64.    Here, Udio training its AI model on independent music without authorization, including the copyrighted songs of Plaintiffs and the Class Members, to then create competing music in the exact same marketplace, is unlikely to be considered fair use, and is therefore prima facie copyright infringement.

**Udio Does Not Qualify For Fair Use**

65.     Indeed, Udio cannot claim "fair use" when it comes to the issues in this case. Fair use is about determining whether the illegal use of another's copyrighted work is "fair," and therefore permissible. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984).

66.     The intentional theft of millions of songs created by independent artists is appalling, wrong, unjustified and certainly not fair. Udio's conduct violates the very purposes of the copyright law and runs contrary to the purpose of the fair use doctrine.

67.     Pursuant to the Copyright Act, 17 U.S.C. § 107, fair use may exist related to "criticism, comment, news reporting, teaching . . . scholarship, or research." These allowances under fair uses reflect the policy of ensuring the purpose of the Copyright Act, which is to promote the progress of art and science by real human authors.

68.     Udio's wholesale copying of countless songs owned by independent artists, Plaintiffs, and Class members serves none of these purposes, and was simply done for commercial gain by Udio.

69.     In furtherance of this commercial gain objectives, Udio copied Plaintiffs' and the Class Members' expressive music catalogs, specifically designed to evoke emotion and passion, in order to create AI music, an exact competing product.

70.     Udio is unable to argue any functional purpose for its AI model to ingest the copyrighted songs of Plaintiffs and the Class Members, other than to create new, competing AI Music.

71.     Pursuant to 17 U.S.C. § 107, the four factors of the fair use doctrine are: (1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) The nature of the copyrighted work; (3) The amount and

substantiality of the portion used; and (4) The effect of the use upon the potential market for or value of the copyrighted work.

72.    Here, Udio copied the copyrighted songs of Plaintiffs and the Class Members for a commercial purpose and is deriving revenue directly proportional to the number of music files it generates, which weighs against a finding of fair use for Udio.

73.    The second fair use factor also favors Plaintiffs. This factor recognizes that "certain 'works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.'" *TCA TV Corp. v. McCollum*, 839 F.3d 168, 184 (2d Cir. 2016) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994)). There is no doubt that the copyrighted songs of Plaintiffs and the Class Members are the type of "creative expression for public dissemination [that] falls within the core of the copyright's protective purposes." *Hachette Book Grp., Inc. v. Internet Archive,* 664 F. Supp. 3d 370, 387 (S.D.N.Y. 2023) (quoting *Campbell*, 510 U.S. at 586)*.*

74.    So too does the third fair use factor weigh against fair use. "A finding of fair use is more likely when small amounts . . . are copied than when the copying is extensive, or encompasses the most important parts of the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015).

75.    Upon information and belief, in training its generative AI model, Udio copied songs wholesale, which includes the most important parts of the protected songs, which is evident in AI Music's ability to recreate and mimic not only the most recognizable musical phrases, hooks, and choruses in popular music history (as also argued by major record labels in their Lawsuit against Udio), but also the songs created by independent artists, Plaintiffs, and the Class Members.

76.    Udio then uses these copies of key elements of protectable expression to generate

AI Music that resemble the copyrighted songs of Plaintiffs and the Class Members it copied.

77.    As it relates to the fourth factor, Udio's use of copyrighted songs of Plaintiffs and the Class Members poses a significant threat to the market for and value of those copyrighted songs. Even the U.S. Copyright Office affirmed that music licensing is a critical aspect of music ownership, and Plaintiffs and the Class Members certainly license their copyrighted recordings as part of their business models.

78.    The U.S. Copyright Office Report is consistent with the above analysis, expressly acknowledging that the first and fourth factors are the most significant in evaluating fair use in the context of generative AI training. Report at 74.

79.    The first factor evaluates whether the use is transformative, meaning, it adds something new, not merely supersedes the original. Udio not only exploited independent music for a commercially competing product, but Courts have held, which the Copyright Office reiterates, that copying for a substantially similar expressive purpose, such as generating derivative content that competes in the exact same market, is not transformative and weighs against fair use. *Id.* at 45–46 ("Training a model to generate outputs that are substantially similar to copyrighted works... is hard to see as transformative") (Citation removed).

80.    On the other hand, the fourth factor assesses whether the use causes harm to the actual or potential market for the original work. Meaning, if Udio's use causes harm to independent artists by negatively impacting the existing music market for artists' music, such a finding weighs against fair use. Notably, the Copyright Office's report strongly cautions that: "Using copyrighted works to create outputs that serve as substitutes…" in fact would be directly harmful to the relevant marketplace and therefore weighs heavily against fair use. *Id*. at 44–46.

81.    Udio's unauthorized use of the copyrighted songs of Plaintiffs and the Class

Members threatens to eliminate the existing market for licensing songs, as well as the future markets for licensing songs to generative AI companies. However, this decision to license one's songs to AI companies is a deeply personal one, and not one that should be forced upon a creator without their knowledge or consent.

82.    Plaintiffs and Class Members will never be able to claw back their songs that Udio used to train its AI. Once AI ingests copyrighted music, those songs are stored in its neural network, and not capable of deletion or retraction. These acts by Udio were abuse and exploitation of another's intellectual property of the worst kind.

83.    Rather than license copyrighted songs like every other tech-based business is required to do, Udio elected to simply steal the songs of independent artists, Plaintiffs, and the Class Members to then generate AI-soundalike music at virtually no cost to Udio.

84.    There are existing licensing avenues available to Udio, a business about to raise millions of dollars from investors, paying for the songs that make the Udio Website possible, and obtaining consent from independent artists and other rightsholders.

## CLASS ACTION ALLEGATIONS

85.    Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated.

86.    Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> **All independent recording artists and the any entities owned or controlled by such independent recording who own sound recordings, of which are available on any internet-based streaming service at any time since January 1, 2021.**

87.    Excluded from the Class are Udio's officers and directors, and any entity in which Udio has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs,

and assigns of Udio. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

88.    Plaintiffs reserve the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 23 of the Federal Rules of Civil Procedure.

89.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. The exact number of Class Members is unknown to Plaintiffs now, but Plaintiffs estimate that there are thousands of Class Members.

90.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Udio unlawfully used Plaintiffs' and Class Members' Copyrighted material for purposes of training its generative AI model;

    b.    Whether Udio's purpose in using Plaintiffs' and Class Members' Copyrighted material was commercial;

    c.    Whether Udio sought permission to use Plaintiffs' and Class Members' Copyrighted material from the Copyright holders;

    d.    Whether Udio had knowledge that it was using Copyrighted material for purposes of training its generative AI model;

    e.    Whether Plaintiffs and Class Members suffered damages from Udio's misconduct;

    f.    Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

91.    These issues are common to the Class, and their resolution would advance matter

and the parties' interests therein.

92.    <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Copyrighted material, like that of every other Class Member, was available on streaming services and therefore improperly used by Udio to train Udio's generative AI model for commercial purposes. Plaintiffs' claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Udio. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and no defenses are unique to Plaintiffs. Plaintiffs' claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

93.    <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel is competent and experienced in litigating class actions.

94.    <u>Predominance</u>. Udio has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all Plaintiffs' and Class Members' Copyrighted material was unlawfully used by Udio in the same way. The common issues arising from Udio's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

95.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual

Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Udio. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

96.     Udio has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

97.     Finally, all members of the proposed Class are readily ascertainable.

## **CLAIMS FOR RELIEF**

### **FIRST CAUSE OF ACTION**
**(Violation of 17 U.S.C. § 106(1))**

98.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the previous paragraphs as if fully set forth herein.

99.     Plaintiffs and the Class Members own or exercise exclusive control over rights in the federally copyrighted songs that Udio illegally copied, reproduced and used in training of its generative AI model and the development and production of the Udio Website to its customers. Plaintiffs and the Class Members have duly registered each of the Songs.

100.    Udio has knowingly and willfully infringed Plaintiffs' and the Class Members' exclusive rights in copyrighted songs, including but not limited to those songs identified in Exhibit A, by reproducing them in violation of 17 U.S.C. § 106(1).

101.    Udio does not have authorization, permission, license, or consent to reproduce or otherwise use the copyrighted songs of Plaintiffs and Class Members'.

102.    Upon information and belief, Udio used the copyrighted songs of Plaintiffs and the

Class Members, including those identified in Exhibit A, to train its generative AI model, and to produce the output Udio offers to its customers.

103.    Each of Udio's acts of infringement of Plaintiffs' and Class Members' copyrighted songs is a willful violation of 17 U.S.C. § 106(1).

104.    As a direct and proximate result of Udio's infringement of Plaintiffs' exclusive rights, Udio has caused and will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Plaintiffs are therefore entitled to injunctive relief and to either actual damages and Udio's profits or statutory damages pursuant to 17 U.S.C. § 504(c), together with Plaintiffs' costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## SECOND CAUSE OF ACTION
### (Violation of 17 U.S.C. § 106(2))

105.    Plaintiffs repeat, reallege, and incorporate the allegations in the previous paragraphs as if fully set forth herein.

106.    Plaintiffs and the Class Members own or exercise exclusive control over rights in the federally copyrighted songs that Udio has illegally copied, reproduced and used in training of its generative AI model and the development and production of the service Udio offers to its customers.  Plaintiffs and the Class Members have duly registered each of the songs.

107.    Upon information and belief, Udio's generative AI model produces near exact replicas or adapt the original versions of the copyrighted songs of Plaintiffs and the Class Members, the Report states "[s]uch outputs likely infringe the reproduction right and, to the extent they adapt the originals, the right to prepare derivative works.

108.    Udio has knowingly and willfully infringed Plaintiffs' and the Class Members' exclusive rights in copyrighted songs, including but not limited to those sound recordings identified in Exhibit A, by using them to prepare derivative works based upon the copyrighted

work in violation of 17 U.S.C. § 106(2).

109. The derivative works prepared by Udio's generative AI system are central to the services Udio offers to its customers.

110. Udio does not have authorization, permission, license, or consent to use the copyrighted songs of Plaintiffs and Class Members to prepare derivative works.

111. Upon information and belief, Udio used the reproductions of Plaintiffs and the Class Members, including those identified in Exhibit A, to train its generative AI model and to produce the output Udio offers to its customers.

112. Each of Udio's acts of infringement of Plaintiffs' and Class Members' copyrighted songs is a willful violation of 17 U.S.C. § 106(2).

113. As a direct and proximate result of Udio's infringement of Plaintiffs' exclusive rights, Udio has caused and will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law. Plaintiffs are therefore entitled to injunctive relief and to either actual damages and Udio's profits or statutory damages pursuant to 17 U.S.C. § 504(c), together with Plaintiffs' costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request a judgment in their favor and against Udio as follows:

A. For a declaration that Udio has willfully infringed Plaintiffs' and the Class Members' copyright-protected sound recordings.

B. For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Plaintiffs' and the Class Members' copyright-protected songs, including a preliminary

and permanent injunction requiring that Udio and its officers, agents, servants, employees, attorneys, directors, successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing, or materially contributing to or participating in the infringement of any of Plaintiffs' or the Class Members' exclusive rights under federal law, including without limitation in the songs in Exhibit A;

C.     For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from Udio's willful violations of Plaintiffs' and Class Members' rights, including in an amount up to $150,000 per work infringed; or, in the alternative, at Plaintiffs' and Class Members' election, Plaintiffs' and Class Members' actual damages and/or Udio's profits from infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

D.     For an award of Plaintiffs' costs and disbursements in this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

E.     For an award of pre-judgment and post-judgment interest, to the fullest extent available, on any monetary award made part of the judgment against Udio; and

F.     For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims for which trial by jury is proper.

Dated: June 15, 2025

/s/ Arkady Frehktman
Arkady Frehktman
Frekhtman & Assoc
60 Bay 26th Street
Brooklyn, New York 11214
arkady@866attylaw.com
Local Counsel

Jarrett L. Ellzey*
Texas Bar No. 24040864
jellzey@eksm.com
Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Bvld., Suite 200
Houston, Texas 77006
Telephone: (888) 350-3931
Facsimile: (888) 276-3455

Krystle Delgado*
Delgado Entertainment Law, PLLC
6803 E Main St # 1116
Scottsdale, AZ 85251
krystle@delgadoentertainmentlaw.com
Bar No. 031219

*pro hac vice forthcoming*

***Attorneys for Plaintiffs***