UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY JUSTICE and 5TH WHEEL RECORDS, INC., and MY HEARTLAND PUBLISHING, LLC, *each individually and on behalf of all others similarly situated*,

        *Plaintiffs*,

  v.

UNCHARTED LABS, INC., d/b/a Udio.com,

        *Defendant*.

Case No. 1:25-cv-05026-AKH

Hon. Alvin K. Hellerstein

**<u>ORAL ARGUMENT REQUESTED</u>**

---

**DEFENDANT UNCHARTED LABS, INC., D/B/A UDIO.COM'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS TWO, THREE, AND FOUR OF THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

I.     Count II Of The Amended Complaint Fails To State A Copyright Infringement
Claim As To Output ................................................................................................. 5

     A.     The Amended Complaint Does Not Identify Any Alleged Similarity
Between Plaintiffs' Copyrighted Works And Content Generated By Udio ........... 5

     B.     The Amended Complaint Fails To Allege Udio Engaged In Volitional
Conduct ..................................................................................................... 8

II.     The Amended Complaint Fails To State A DMCA Claim Because It Does Not
Allege Udio Circumvented An Access Control .......................................................... 10

     A.     Section 1201's Statutory Framework ................................................................ 10

     B.     The Amended Complaint Alleges Only That Udio Circumvented A Copy
Control, Not An Access Control .................................................................... 13

III.     The Amended Complaint Fails To State A Tennessee Consumer Protection Act
Claim Because The Claim is Preempted By The Copyright Act And Lacks
Particularity ........................................................................................................... 17

     A.     Plaintiffs' TCPA Claim is Preempted by the Copyright Act ................................ 17

     B.     Plaintiffs' TCPA Claim Fails To State A Claim ................................................. 20

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*ABKCO Music, Inc. v. Sagan*,
   50 F.4th 309 (2d Cir. 2022) ....................................................................................8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................4, 7

*Bartz v. Anthropic PBC*,
   787 F. Supp. 3d 1007 (N.D. Cal. 2025) .....................................................................2

*Bearden v. Honeywell Int'l Inc.*,
   2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010)........................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................4

*Blankenship v. Nissan N. Am., Inc.*,
   2023 WL 4037150 (M.D. Tenn. June 15, 2023) .......................................................21

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) ....................................................................6

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004) ...................................................................... 17, 18, 19

*Bus. Casual Holdings, LLC v. YouTube LLC*,
   2022 WL 837596 (S.D.N.Y. Mar. 21, 2022)............................................................10

*Capitol Records, LLC v. ReDigi Inc.*,
   934 F. Supp. 2d 640 (S.D.N.Y. 2013) .....................................................................16

*Cartoon Network LP, LLP v. CSV Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ...................................................................................9

*ChampionX, LLC v. Resonance Sys., Inc.*,
   726 F. Supp. 3d 786 (E.D. Tenn. 2024) ..................................................... 19, 20, 22

*Cheairs v. Thomas*,
   2023 WL 1442956 (W.D. Tenn. Feb. 1, 2023) .....................................................19, 20

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018) ...................................................................................7

*Dean v. Cameron*,
    53 F. Supp. 3d 641 (S.D.N.Y. 2014) .................................................................. 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................................................ 5

*Goldberger v. Bear, Stearns & Co.*,
    2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000) ................................................... 8

*Hamlin v. Trans-Dapt of California, Inc.*,
    584 F. Supp. 2d 1050 (M.D. Tenn. 2008) ........................................................ 20

*Hard Surfaces Sols., LLC v. Constr. Mgmt., Inc.*,
    544 F. Supp. 3d 825 (M.D. Tenn. 2021) ...................................................... 21, 22

*Hattler v. Ashton*,
    2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ................................................ 15

*Integrity Def. Servs., Inc. v. WireMasters, Inc.*,
    2024 WL 779593 (M.D. Tenn. Feb. 26, 2024) ................................................. 21

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020) ........................................................................... 18, 19

*Jones v. Weill Cornell Med.*,
    2025 WL 2444221 (S.D.N.Y. Aug. 25, 2025) ................................................... 4

*Kadrey v. Meta Platforms, Inc.*,
    2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ................................................... 6

*Kadrey v. Meta Platforms, Inc.*,
    788 F. Supp. 3d 1026 (N.D. Cal. 2025) ............................................................ 2

*Keane v. Velarde*,
    2022 WL 3577841 (S.D.N.Y. Aug. 19, 2022), *aff'd sub nom, Keane v.*
    *Dibbins*, 2023 WL 6785370 (2d Cir. Oct. 13, 2023) ......................................... 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) ...................................................................... 14, 15

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
    83 F. Supp. 3d 501 (S.D.N.Y. 2015) ............................................................... 15

*Melendez v. Sirius XM Radio, Inc.*,
    50 F.4th 294 (2d Cir. 2022) .................................................................. 4, 17, 19

*Montgomery v. NBC Television*,
    833 F. App'x 361 (2d Cir. 2020) ....................................................................... 4

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
    299 F. App'x 509 (6th Cir. 2008) ................................................................. 6

*Patel v. Hughes*,
    2014 WL 4655285 (M.D. Tenn. Sept. 16, 2014) ....................................... 20

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) .......................................................................... 5

*Piuggi v. Good for You Prods. LLC*,
    739 F. Supp. 3d 143 (S.D.N.Y. 2024) ..................................................... 5, 6

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) .......................................................................... 8

*Rajapakse v. Internet Escrow Servs.*,
    2022 WL 4783041 (E.D. Tenn. Sept. 30, 2022) ....................................... 21

*Ricci v. Teamsters Union Loc. 456*,
    781 F.3d 25 (2d Cir. 2015) .......................................................................... 4

*Tremblay v. OpenAI, Inc.*,
    716 F. Supp. 3d 772 (N.D. Cal. 2024) ........................................................ 6

*Tucker v. Sierra Builders*,
    180 S.W.3d 109 (Tenn. Ct. App. 2005) ................................................... 17

*UMG Recordings, Inc. v. Kurbanov*,
    2021 WL 6492907 (E.D. Va. Dec. 16, 2021) ........................................... 14

*United States v. Elcom Ltd.*,
    203 F. Supp. 2d 1111 (N.D. Cal. 2002) ............................................. 10, 12

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ......................................................... 11, 13, 14

*Urbont v. Sony Music Ent.*,
    831 F.3d 80 (2d Cir. 2016) ........................................................................ 17

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ...................................................................... 9

*Waggin' Train, LLC v. Normerica, Inc.*,
    2010 WL 145776 (W.D. Tenn. Jan. 8, 2010) ........................................... 22

*Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*,
    354 F.3d 112 (2d Cir. 2003), *abrogated on other grounds by Reed Elsevier,*
    *Inc. v. Muchnick*, 559 U.S. 154 (2010) ...................................................... 5

*Wells v. Chattanooga Bakery, Inc.*,
    448 S.W.3d 381 (Tenn. Ct. App. 2014) ................................................................... 19

*White v. DistroKid, LLC*,
    766 F. Supp. 3d 451 (S.D.N.Y. 2025) ....................................................................... 9

*Whitehardt, Inc. v. McKernan*,
    2016 WL 4091626 (M.D. Tenn. Aug. 2, 2016) ........................................................ 20

*Wolk v. Kodak Imaging Network, Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v.*
    *Photobucket.com, Inc*., 569 F. App'x 51 (2d Cir. 2014) ........................................... 10

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
    633 F. Supp. 3d 650 (D. Conn. 2022), *appeal docketed*, No. 22-2760 (2d Cir.
    Oct. 28, 2022) ...................................................................................................16, 17

## Rules/Statutes

17 U.S.C. § 106(2) ............................................................................................................1, 5

17 U.S.C. § 107 .......................................................................................................................2

17 U.S.C. § 301(a) .................................................................................................................17

17 U.S.C. § 1201................................................................... 1, 3, 10, 11, 12, 13, 14, 15, 16

Federal Rule of Civil Procedure 9(b) .................................................................................21, 22

Federal Rule of Civil Procedure 12(b)(6) .............................................................................1, 4

Tenn. Code Ann. § 47-18-104(b) ...........................................................................................21

Tenn. Code Ann. § 47-18-109(a)............................................................................................21

## Other Authorities

U.S. Copyright Off., *The Digital Millennium Copyright Act of 1998: U.S.*
    *Copyright Office Summary*, 4 (Dec. 1998),
    https://www.copyright.gov/legislation/dmca.pdf ....................................................... 12

U.S. Copyright Off., Section 1201 of Title 17: A Rep. of the Reg. of Copyrights,
    at 6 (June 2017) ...................................................................................................11, 12

Defendant Uncharted Labs, Inc., d/b/a Udio.com ("Udio") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Udio is a generative artificial intelligence ("AI") platform that creates music based on textual prompts inputted by users. Udio seeks dismissal of three of the four claims asserted in the Amended Complaint on the grounds that they fail to state a claim upon which relief can be granted. Plaintiffs' 17 U.S.C. § 106(2) copyright infringement claim based upon purportedly infringing output generated by Udio (Count II) warrants dismissal because the Amended Complaint does not allege substantial similarity (a required element of copyright infringement) between any song owned by Plaintiffs and any output generated by Udio. Separately, Plaintiffs' output-based copyright claim also fails because the Amended Complaint does not allege Udio engaged in volitional conduct that caused the allegedly infringing outputs.

Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim (Count III) is subject to dismissal because 17 U.S.C. § 1201 prohibits only the circumvention of "access controls"—technological protection measures ("TPMs") that prevent users from accessing the work, and not the circumvention of "copy controls"—TPMs that protect a copyright holder's exclusive rights (*e.g.*, reproducing or distributing the work) after a user accesses the work. Plaintiffs' allegations are deficient as a matter of law because they assert only that Udio circumvented YouTube's copy controls, an activity not prohibited by the DMCA.

Plaintiffs' final claim, for violation of the Tennessee Consumer Protection Act ("TCPA") (Count IV), fails for two independent reasons. First, because this claim seeks to vindicate the same rights implicated by Plaintiffs' copyright claims, it is preempted by the Copyright Act. Second,

1

the Amended Complaint fails to identify any conduct in which Udio engaged that is outlawed by the TCPA.

Accordingly, for the reasons discussed herein, Counts II, III, and IV of the Amended Complaint should be dismissed.

## BACKGROUND

Plaintiffs filed this action in June 2025 alleging two types of copyright infringement. ECF No. 5. The complaint alleged that Udio infringed Plaintiffs' copyrights by (1) using their songs to train its AI model and (2) providing a service that enables users to create outputs that purportedly sound like Plaintiffs' songs. Udio answered the complaint, asserting that the use of Plaintiffs' songs in training AI constituted fair use under 17 U.S.C. § 107 and denying that it created works infringing on Plaintiffs' copyrights. ECF No. 34. Plaintiffs then filed an unopposed motion for leave to amend their complaint, which this Court granted. ECF Nos. 35, 36. The Amended Complaint adds two new claims and contains additional allegations relating to the two copyright claims originally asserted. ECF No. 37 (Am. Compl.).

The first cause of action in the Amended Complaint, for copyright infringement based on Udio's alleged use of Plaintiffs' songs in training its AI model, Am. Compl. ¶¶ 365-71, is not at issue in this motion to dismiss— although Udio will eventually challenge this claim on the grounds that Udio's use of Plaintiffs' songs to train its AI model constitutes fair use under the Copyright Act. *See, e.g.*, *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1034 (N.D. Cal. 2025); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025).

The second cause of action in the Amended Complaint, for copyright infringement based on Udio's purportedly infringing output, should be dismissed. Am. Compl. ¶¶ 372-83. Plaintiffs allege that "Udio's generative AI model produces near exact replicas" of and prepares "derivative works" based on Plaintiffs' songs. *Id.* ¶¶ 376-78. However, despite conclusory assertions that

Udio generated songs that are "substantially similar, if not exactly identical" to Plaintiffs' songs, *id.* ¶ 38, nowhere in the Amended Complaint do Plaintiffs identify a single output generated by Udio that sounds like or interpolates Plaintiffs' works.

The third cause of action in the Amended Complaint, for violation of 17 U.S.C. § 1201(a)(1)—the DMCA's provision prohibiting the circumvention of TPMs that control access to copyrighted work—should also be dismissed. Am. Compl. ¶¶ 384-98. Plaintiffs allege that Udio circumvented YouTube's TPMs to download songs to train its AI model. *Id.* ¶ 388. Plaintiffs allege that YouTube employs a "rolling cipher" that prevents "directly downloading protected YouTube videos." *Id.* ¶¶ 295-96. Despite its attempt to frame this as a feature that controls "access" to copyrighted work, *id.* ¶ 296, the Amended Complaint concedes that copyrighted works are available for streaming to anyone, *id.* ¶ 287 ("YouTube users are able to stream (i.e., view) audiovisual content"). Plaintiffs make no allegation that Udio had to circumvent any TPM to access their works, only that Udio circumvented controls "implemented to prevent the downloading and copying" of songs. *Id.* ¶ 303.

Lastly, the fourth cause of action in the Amended Complaint, for a violation of the TCPA, should be dismissed because it is preempted by the Copyright Act and, separately, fails to state a claim. *Id.* ¶¶ 399-408. Plaintiffs allege that "Udio engaged in unfair and deceptive acts and practices by misappropriating Plaintiffs' and Subclass Members' voices" and using Plaintiffs' "distinctive identifiers" to "to generate outputs that misappropriate their brands." *Id.* ¶ 402. Udio allegedly then "deceptively marketed these outputs as 'new' or 'original,' while concealing the fact that they were derived from misappropriated works and voices." *Id.* ¶ 404. But Plaintiffs do not identify any output that "misappropriate[d] their brands" or any deceptive marketing. *Id.* ¶ 403.

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Jones v. Weill Cornell Med.*, 2025 WL 2444221, at *1 (S.D.N.Y. Aug. 25, 2025) (Hellerstein, J.) (quotations omitted); *see also Montgomery v. NBC Television*, 833 F. App'x 361, 363-65 (2d Cir. 2020) (affirming 12(b)(6) dismissal of copyright infringement claim). Courts thus routinely grant motions to dismiss where the plaintiff's case turns on an erroneous interpretation of statutory language that conflicts with the statute's text, context, or legislative history. *See, e.g.*, *Keane v. Velarde*, 2022 WL 3577841, *4-7 (S.D.N.Y. Aug. 19, 2022) (granting motion to dismiss where plaintiffs' interpretation of statute was inconsistent with "statutory context and [] broader statutory scheme" reflected in legislative history), *aff'd sub nom. Keane v. Dibbins*, 2023 WL 6785370 (2d Cir. Oct. 13, 2023). Courts also grant motions to dismiss when it "is evident from the face of the complaint" that a state law claim is preempted by federal law. *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 300 (2d Cir. 2022) (quoting *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015)). Further, dismissal under Rule 12(b)(6) is proper if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing a claim's plausibility, a Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," or give effect to "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ARGUMENT**

I.    **Count II Of The Amended Complaint Fails To State A Copyright Infringement Claim As To Output**

In Count II, which claims a violation of 17 U.S.C. § 106(2), Plaintiffs allege that Udio has

the *potential* to create output that could infringe Plaintiffs' songs, but do not identify any specific

output that is purportedly infringing.  Am. Compl. ¶¶ 372-83.  That failure to identify or describe

the allegedly infringing output purportedly generated by Udio, or even to offer any description or

analysis of the alleged "substantial similarity" between Plaintiffs' copyrighted works and the

allegedly infringing output, is fatal to the claim.  Moreover, the Amended Complaint does not

allege that Udio engaged in any volitional conduct in creating the allegedly infringing output.

A.    **The Amended Complaint Does Not Identify Any Alleged Similarity Between Plaintiffs' Copyrighted Works And Content Generated By Udio**

To state a claim for copyright infringement pursuant to 17 U.S.C. § 106(2), Plaintiffs must

allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work

that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The

second prong requires Plaintiffs to allege actual copying and that "the copying is illegal because a

substantial similarity exists between the defendant's work and the protectible elements of

plaintiff's."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir.

2010) (quotations omitted).  To state a claim based on a derivative work, such as potential output

from Udio, Plaintiffs likewise must allege substantial similarity between Plaintiffs' asserted work

and the allegedly infringing output.  *See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d

112, 117 (2d Cir. 2003) (requiring derivative work have substantial similarity), *abrogated on other*

*grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

To state a copyright infringement claim, a plaintiff must plead substantial similarity "with

some degree of specificity."  *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 162

(S.D.N.Y. 2024) (quotations omitted).  Absent such specificity, courts will dismiss copyright claims, including in the generative AI context.  For example, in *Kadrey v. Meta Platforms, Inc.*, the plaintiffs alleged that "every output" of a generative AI platform necessarily created infringing derivative works.  2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023).  The court rejected that position and dismissed the claim because the "complaint offer[ed] no allegation of the contents of any output" and thus did not adequately allege similarity between the plaintiffs' works and the outputs.  *Id.*  Similarly, a vicarious copyright infringement claim failed when the plaintiffs "fail[ed] to explain what the outputs entail or allege that any particular output is substantially similar – or similar at all – to their books."  *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 778 (N.D. Cal. 2024).

Outside the AI context, courts consistently dismiss copyright claims based on conclusory allegations of similarity.  *See, e.g.*, *Piuggi*, 739 F. Supp. 3d at 165 (dismissing copyright claim because plaintiff only made vague and conclusory allegations, such as that the allegedly infringing work "appropriate[d] many elements" and that "elements … were pulled 'word-for-word'"); *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (affirming dismissal where plaintiff "failed to even allege which, if any, of defendants' materials were infringing" and the "complaint amounts to no more than a speculative claim that Defendants may have produced some work that in some way infringed upon Plaintiff's works"); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing copyright claim that only contained "general allegations" such as, "[D]ozens of characters … are derived from and substantially similar to [plaintiffs'] characters" (first alteration in original)).

Here, Plaintiffs have failed to identify a single infringing output or any similarities between their works and output created by Udio. They provide only general and conclusory allegations of similarity. For example, they allege that "evidence exists that Udio's AI model(s) has generated exact or nearly exact versions of Plaintiffs' … songs." Am. Compl. ¶ 86. But Plaintiffs never identify that evidence or describe any "exact or nearly exact" song produced by Udio. Plaintiffs also allege that "upon information and belief, infringing works produced by Udio are substantially similar, if not exactly identical, to" Plaintiffs' songs. *Id.* ¶ 38. But Plaintiffs provide no description of these supposedly "exactly identical" works. *See, e.g.*, *id.* ¶ 280 (alleging Udio "interpolate[s] various elements from" Plaintiffs' songs but failing to identify any interpolation); *id.* ¶ 267 (alleging Udio's technology "reproduce[s]" Plaintiffs' songs but failing to identify any reproduction); *id.* ¶ 376 (alleging "Udio's generative AI model produces near exact replicas," of Plaintiffs' songs but failing to identify any near exact replicas). Thus, like the claims in *Kadrey* and *Tremblay*, Plaintiffs' claim fails because they neither describe the contents of any infringing output nor include any non-conclusory allegations of similarity.

Plaintiffs' invocation of the words "substantially similar" (Am. Compl. ¶¶ 38, 47), without more, is also insufficient to state a claim, *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, many of Plaintiffs' allegations are prefaced by "upon information and belief." *See, e.g.*, Am. Compl. ¶¶ 38, 375-76. Why would Plaintiffs need to make allegations of similarity on information and belief when Udio's product is freely available for Plaintiffs to use—unless, of course, Plaintiffs have not found any substantially similar output? Plaintiffs "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).

The Amended Complaint's allegations that Udio generated works similar to other third-party artists' songs are insufficient to state a claim. A class-action plaintiff "must state a claim in its own right to survive a motion to dismiss." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 101 (2d Cir. 2021); *see also Goldberger v. Bear, Stearns & Co.*, 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000) ("If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.").

To the extent Plaintiffs include allegations of alleged similarities to other artists' songs as some supposed circumstantial evidence that Udio has produced songs similar to Plaintiffs' works, *see* Am. Compl. ¶ 147, those allegations are insufficient to state a claim as to Udio, *cf. Dean v. Cameron*, 53 F. Supp. 3d 641, 647 (S.D.N.Y. 2014) ("[A] court must not 'aggregate' a plaintiff's work, but must consider each allegedly infringed work independently. … Nothing in the Copyright Act or Second Circuit case law 'supports the view that a plaintiff's entire oeuvre, or even an aggregated portion of it, may be used as the point of comparison….'"). Alleged similarities to other songs, such as Michael Jackson's "Billie Jean", Am. Compl. ¶ 259, say nothing about whether Udio produced output similar to ***Plaintiffs'*** songs.

Because Plaintiffs have failed to sufficiently allege that any songs generated by Udio infringed on Plaintiffs' own copyrighted works, Count II should be dismissed.

**B.      The Amended Complaint Fails To Allege Udio Engaged In Volitional Conduct**

Separate and apart from its failure to allege substantial similarity, the second cause of action in the Amended Complaint should be dismissed because it does not allege that Udio engaged in volitional conduct that caused allegedly infringing outputs.

To sufficiently plead direct copyright infringement, a complaint must allege that the defendant engaged in "volitional conduct" that causes the infringement in question. *See ABKCO*

*Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022); *Cartoon Network LP, LLP v. CSV Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) (volitional conduct is an "important element of direct liability"). Volitional conduct "requires some active steps, as opposed to mere passive action." *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 458 (S.D.N.Y. 2025). Stated another way, "direct liability attaches only to the person who actually presses the button." *ABKCO*, 50 F.4th at 322 (quotations omitted).

The law distinguishes between services that take action automatically at a user's request and those that do so absent a user's request. "[W]here a machine or system automatically undertakes actions that result in the unlawful copying of a copyrighted work, the mere ownership, construction, or supervision of the machine or system will ***not*** establish volitional conduct." *DistroKid*, 766 F. Supp. 3d at 458 (emphasis added); *see also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) (a websites' "automatic" functionalities, "such as automatic copying, storage, and transmission of copyrighted materials" do not give rise to direct infringement liability because they are not volitional). For example, in *Cartoon Network*, the Second Circuit held the defendant did not engage in volitional conduct and thus was not liable for copyright infringement when it produced copies of television shows at the user's request without human involvement on behalf of the defendant; rather, it was the customer who "made" the copies. 536 F.3d at 130-33.

Plaintiffs' claim regarding output fails to allege that Udio engaged in any non-automatic conduct that caused the allegedly infringing output. Instead, the relevant allegations in the Amended Complaint implicate entirely automated conduct by Udio's computer code directed at the general operation of the service ***when prompted by users of the service***. For example, while Plaintiffs allege Udio generated output resembling popular songs, that allegedly similar output was the result of prompts entered by users—not by Udio. *See, e.g.*, Am. Compl. ¶ 244 (alleging Udio

generated a song resembling ABBA's "Dancing Queen" "***using a prompt***") (emphasis added); *id.* ¶ 245 ("***Using prompts*** referencing The Beatles, Udio likewise produced multiple outputs that recreate the melody, harmonic progressions, and rhythmic contours of Yesterday.") (emphasis added). Plaintiffs' output claim therefore fails because it does not plausibly allege volitional conduct by Udio. *See Bus. Casual Holdings, LLC v. YouTube LLC*, 2022 WL 837596, at *4 (S.D.N.Y. Mar. 21, 2022) (dismissing copyright claim that failed to allege volitional conduct); *see also Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012) (granting summary judgment because there was no volitional conduct when "any reproduction, display or transmission of the Plaintiff's images by or through the … website is an automated process with no human intervention by any employee of the Kodak Defendants"), *aff'd sub nom. Wolk v. Photobucket.com, Inc*., 569 F. App'x 51 (2d Cir. 2014).

## II.    The Amended Complaint Fails To State A DMCA Claim Because It Does Not Allege Udio Circumvented An Access Control

The third cause of action in the Amended Complaint should be dismissed because it fails to state a claim under Section 1201 of the DMCA. Plaintiffs base their DMCA claim on Section 1201(a)(2), which prevents the circumvention of access controls. But Plaintiffs allege only that Udio circumvented a *copy* control, which is not prohibited by the DMCA.

### A.    Section 1201's Statutory Framework

Congress enacted 17 U.S.C. § 1201 as part of the DMCA, "in recognition of the fact that in the digital age, authors must employ protective technologies in order to prevent their works from being unlawfully copied or exploited." *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002). In Section 1201, "Congress sought to prohibit certain efforts to unlawfully circumvent protective technologies, while at the same time preserving users' rights of fair use." *Id.*

10

To strike the appropriate balance, Section 1201 distinguishes between "access controls" and "copy controls," and places different restrictions on the different controls.  *See* U.S. Copyright Off., Section 1201 of Title 17: A Rep. of the Reg. of Copyrights, at 6 (June 2017) ("USCO 2017 Report").  Section 1201(a) addresses access controls; it targets "technological measure[s] that effectively ***control[] access*** to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A) (emphasis added).  An access control is one that "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."  *Id.* § 1201(a)(3)(B).  In other words, an access control is a digital lock that must be opened before a user can read, view, use, or listen to the work at all—such as a password-protected website "or authentication codes in video game consoles to prevent the playing of pirated copies."  USCO 2017 Report at 6.

By contrast, Section 1201(b) addresses copy controls; it targets "technological measure[s] that effectively protect[] a right of a copyright owner under this title in a work or a portion thereof."  17 U.S.C. § 1201(b)(1)(A).  Technological measures that "protect[] a right of a copyright owner" are "designed to permit access to a work but prevent *copying* of th[at] work."  *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (emphasis in original).  For example, "technology preventing the copying of an e-book after it has been downloaded to a user's device" is a copy control.  USCO 2017 Report at 6.

Section 1201 imposes different limitations on access controls and copy controls.  For access controls, Section 1201(a) prohibits any person from "circumvent[ing] a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A).  "[T]o 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair

a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). Section 1201(a) also prohibits the trafficking and marketing of technology that assists individuals in circumventing access controls. *Id.* § 1201(a)(2). In other words, Section 1201(a) prohibits "both the act of circumventing access control restrictions as well as trafficking in and marketing of devices that are primarily designed for" circumventing access controls. *Elcom Ltd.*, 203 F. Supp. 2d at 1119-20.

By contrast, for copy controls, Section 1201(b) contains only a trafficking prohibition. *See* 17 U.S.C. § 1201(b). Congress thus did not prohibit the circumvention of copy controls, but only the trafficking and marketing of devices primarily designed to circumvent copy controls. As summarized by the U.S. Copyright Office, the statutory structure of Section 1201 is as follows:

| 17 U.S.C. § 1201 | Circumvention Prohibition? | Trafficking Prohibition? |
|---|---|---|
| Access Controls | Yes<br>§ 1201(a)(1) | Yes<br>§ 1201(a)(2) |
| Copy Controls | No | Yes<br>§ 1201(b) |

USCO 2017 Report at 7.

The different treatment of access controls versus copy controls was purposeful. Congress opted not to prohibit the circumvention of copy controls to preserve the public's right to engage in fair uses of content that is lawfully accessible. *See* U.S. Copyright Off., *The Digit Millennium Copyright Act of 1998: U.S. Copyright Off Summary*, 4 (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf ("This distinction was employed to assure that the public will have the continued ability to make fair use of copyrighted works. Since copying

of a work may be a fair use under appropriate circumstances, section 1201 does not prohibit the act of circumventing a technological measure that prevents copying.").

### B.    The Amended Complaint Alleges Only That Udio Circumvented A Copy Control, Not An Access Control

Here, although Plaintiffs bring a Section 1201(a) claim, the "rolling cipher" described in the Amended Complaint is a copy control, not an access control.  Am. Compl. ¶¶ 384-98.  Plaintiffs thus attempt to bring a Section 1201(a) claim based on the circumvention of a copy control, despite that the DMCA does not forbid the circumvention of copy controls.

Plaintiffs' own allegations establish that the YouTube content at issue is not guarded by any access control within the meaning of Section 1201(a)(1).  Plaintiffs allege that "YouTube users are able to stream (i.e., view) audiovisual content" without any restriction.  Am. Compl. ¶ 287. The Amended Complaint does not allege that Udio encountered or circumvented any technological measure in order to gain access to the videos.  *See id.* ¶ 73 ("Upon information and belief, Udio used and/or accessed streaming services on which Plaintiffs and Class Members had licensed their copyrighted songs….").  Plaintiffs thus do not allege that YouTube employed an access control. *See Corley*, 273 F.3d at 441 ("the focus of subsection 1201(a)(2) is circumvention of technologies designed to *prevent access* to a work" (emphasis in original)).

Rather, Plaintiffs allege that YouTube employs a copy control.  Plaintiffs describe the rolling cipher as "prevent[ing] the downloading and copying of YouTube's videos and songs." Am. Compl. ¶ 303; *see also id.* ¶ 287 ("YouTube users … are *not* permitted to make permanent, unrestricted copies of the videos (or any songs contained in those videos) through YouTube." (emphasis in original)).  Although in opposition to this motion Plaintiffs may attempt to reframe the rolling cipher as an access control by pointing to the occasional use of the word "access" in their allegations, the control they describe in the Amended Complaint unquestionably targets

13

downloading and copying, not access. *See, e.g.*, *id*. ¶ 296 ("Rolling cipher encryption controls access to YouTube videos by ***preventing external sites or services from directly downloading protected YouTube videos***." (emphasis added)); *id*. ¶ 298 ("The file URL is encrypted using a rolling cipher algorithm that is regularly changing and is specifically designed to stop external access of YouTube videos (***e.g., downloading, copyright, distributing videos***)." (emphasis added)).

Because YouTube users are permitted to access the work but are prohibited from downloading it, Plaintiffs have described a copy control, covered by Section 1201(b). *See Corley*, 273 F.3d at 441 ("the focus of subsection 1201(b)(1) is circumvention of technologies designed to *permit access* to a work but *prevent copying* of the work or some other act that infringes a copyright" (emphasis in original)); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 545 (6th Cir. 2004) (describing "streaming media, which permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work" as covered by Section 1201(b) because Section 1201(b) "prohibits devices aimed at circumventing technological measures that allow some forms of 'access' but restricts other uses of the copyrighted work") *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Indeed, at least one court has found that allegations that a website was designed to circumvent YouTube's rolling cipher stated a claim under Section 1201(b)'s trafficking prohibition. *See UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907, at *7-8 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022).

In contrast, courts have held that similar allegations fail to state a claim under Section 1201(a). For example, in *Hattler v. Ashton*, the court dismissed a Section 1201(a)(1) claim where the plaintiff alleged the defendants "downloaded the Works in a manner that circumvented the

14

technological protections on the websites where the Works were available for streaming."  2017 WL 11634742, at *5 (C.D. Cal. Apr. 20, 2017).  The *Hattler* court reasoned that "the statutory structure, appellate precedent and legislative history of the DMCA all support" a conclusion that Section 1201(a)(1) "should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying."  *Id.* at *8; *see also LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 510-11 (S.D.N.Y. 2015) (dismissing Section 1201(a) claim where alleged misconduct occurred after defendant had access to the work).

Similarly, in *Lexmark*, the Sixth Circuit rejected an access-control trafficking claim when the work was already available.  387 F.3d at 546-48.  In that case, a printer manufacturer brought an anti-trafficking claim against the maker of remanufactured toner cartridges under Section 1201(a)(2), on the theory that those toner cartridges were a product that circumvented the access controls on a "Printer Engine Program" that prevented "making use of" the program code.  *Id.* at 548.  The court of appeals rejected that claim, reversing the district court because there was "[n]o security device" that "protect[ed] access" to the code and "no security device accordingly must [have been] circumvented to obtain access to that program code."  *Id.* at 547.  The court thus concluded that a measure that prevented "making use of" a copyrighted work was not an access control where the work was "otherwise accessible."  *Id.* at 547-48.

Like the works in *Hattler* and *Lexmark*, the works at issue here are readily accessible to the public and not protected by any TPM; any person can stream Plaintiffs' music on YouTube. The only TPM YouTube employs prohibits "making use of" the copyrighted work by preventing the downloading and copying of the files where the work is stored.  *See.* Am. Compl. ¶¶ 294-99. The fact that the underlying digital file of the work is not freely accessible does not transform the rolling cipher into an access control.  *See, e.g.*, Am. Compl. ¶ 299 ("The very purpose of the rolling

cipher is to stop a YouTube user from gaining access to the files themselves contained within the videos as permanent, unrestricted downloads.").  The only TPMs that qualify under Section 1201(a) are those that "control[] access to [the] *work*" by "requir[ing] the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the *work*."  17 U.S.C. §§ 1201(a)(1), (a)(3)(B) (emphasis added).  A "work," in this context, means the content itself—*i.e.*, the copyrighted expression embodied in the "video files" that YouTube makes available for free public streaming.[1]  Am. Compl. ¶¶ 287, 297.  If the copyrighted expression is available without going through or circumventing the TPM, then the TPM does not "effectively control[] access to [the] work."  *See* 17 U.S.C. § 1201(a)(1)(A).  A copy control does not become an access control simply by hiding the underlying file, when the content of that file is streamed for everyone in the world to see and hear on demand.

In opposition to this motion, Plaintiffs may invoke *Yout, LLC v. Recording Industry Association of America, Inc.*, 633 F. Supp. 3d 650 (D. Conn. 2022), *appeal docketed*, No. 22-2760 (2d Cir. Oct. 28, 2022).  The *Yout* court held that YouTube employs an access control.  *Id.* at 676.  But the *Yout* opinion is inapplicable because the court did not consider whether YouTube's rolling cipher was a copy control instead of an access control.  *See* 633 F. Supp. 3d at 677 n.14.  Accordingly, this Court should not rely on *Yout*, which is currently on appeal before the Second Circuit.[2]

---

[1]  The term "work" under the Copyright Act refers to an author's creative expression, rather than the particular "material embodiments" of the work (*i.e.*, copies of it).  *See, e.g., Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648-49 (S.D.N.Y. 2013) (noting that copyrighted works, including sound recordings, are "distinguished from their material embodiments" and citing House and Senate Reports concluding the same).

[2]  Udio recently filed an amicus brief in the Second Circuit to bring the Court's attention to the important errors in the *Yout* opinion, which the parties to that appeal had not sufficiently addressed in their briefing.  *Yout LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, ECF 127 (2d Cir. Oct. 10, 2025).

### III. The Amended Complaint Fails To State A Tennessee Consumer Protection Act Claim Because The Claim is Preempted By The Copyright Act And Lacks Particularity

The Amended Complaint also asserts a claim under the Tennessee Consumer Protection Act. Am. Compl. ¶¶ 399-408. Plaintiffs' TCPA claim appears to be premised on (1) Udio's alleged use of Plaintiffs' songs to create new output without disclosing "that they were derived from" Plaintiffs' songs, *id.* ¶¶ 403-04, and (2) Udio's alleged use of Plaintiffs' "distinctive identifiers - including their voices - to generate outputs that misappropriate their brands," *id.* ¶ 403. Preliminarily, Plaintiffs may not bring a TCPA claim as a class action. *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 n.9 (Tenn. Ct. App. 2005) ("class actions cannot be maintained under the TCPA").[3] In any event, the claim should be dismissed because (1) it is preempted by the Copyright Act and (2) otherwise fails to allege an unlawful act by Udio subject to the TCPA.

#### A. Plaintiffs' TCPA Claim is Preempted by the Copyright Act

"[T]he Copyright Act 'preempts state law claims asserting rights equivalent to those protected within the general scope of the statute.'" *Melendez*, 50 F.4th at 300 (quoting *Urbont v. Sony Music Ent.*, 831 F.3d 80, 93 (2d Cir. 2016)); *see* 17 U.S.C. § 301(a). To determine whether the Copyright Act preempts a state law, courts apply a two-prong test: (1) a "subject matter" prong and (2) a "general scope" prong. *Melendez*, 50 F.4th at 300-01. Both prongs are met here.

The first "subject matter" prong is satisfied when the state law claim applies to a tangible copyrightable work. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). To the extent the Amended Complaint alleges that Udio violated the TCPA by copying Plaintiffs' songs to create derivative works, Am. Compl. ¶¶ 403-04, the subject matter prong is

---

[3]  If the Court does not dismiss the TCPA claim for its substantive failures, it should strike the class allegations. *Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) (striking class action allegations because "plaintiffs may not maintain their TCPA claim on behalf of the putative class").

satisfied because the claim plainly applies to Plaintiffs' copyrighted songs. *See In re Jackson*, 972 F.3d 25, 42-43 (2d Cir. 2020). To the extent the Amended Complaint alleges that Udio violated the TCPA by misappropriating Plaintiffs' "brand" and "distinctive identifiers," Am. Compl. ¶ 403, the subject matter prong is also met because Plaintiffs' allegations are premised upon the alleged copying of Plaintiffs' copyrighted songs, which allegedly contain Plaintiffs' purported "distinctive identifiers" and "brands." For example, Plaintiffs allege that "[b]y reproducing these distinctive identifiers, Udio has … ***copied the underlying recordings***." *Id.*. ¶ 150 (emphasis added); *see also id.* ¶ 112 ("By ***copying and using their songs***, brands, and voices without authorization" (emphasis added)); *id.* ¶ 149 ("The existence of exact or nearly exact outputs copying pre-existing songs ***evidences Udio's intentional copyright infringement, as well as misappropriation of the accompanying voices and associated with those songs*** belonging to Plaintiffs…." (emphasis added)). Thus, the "gravamen" of the claim is the alleged copying of Plaintiffs' songs. *Jackson*, 972 F.3d at 47 (whether a claim is focused on the sound of plaintiff's voice or the copyrighted work "depend[s] on the gravamen of the claim and the allegations supporting it").

The "general scope" prong is satisfied when the state law claim involves "an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law," such as "reproduction, adaptation, performance, distribution or display." *Briarpatch*, 373 F.3d at 305. Additionally, the "general scope" prong requires that the state law claim "not include any extra elements that make it qualitatively different from a copyright infringement claim." *Id.*

Here, Plaintiffs' TCPA claim is equivalent to Plaintiffs' copyright claim. Looking at "what the plaintiff seeks to protect … and the rights sought to be enforced," *id*. at 306, Plaintiffs seek to protect and enforce their rights as copyright owners to reproduce and create derivative works, *see, e.g.*, Am. Compl. ¶ 46 ("The ***interpolation of the songs belonging to Plaintiffs***, Class Members,

and Subclass Members, as well as the use and recreation of their voices, into **unauthorized derivative works** unfairly competes and **violates copyright law**." (emphasis added)); *id.* ¶ 47 ("By **reproducing** of Plaintiffs', Class Members', and Subclass Members' voices…" (emphasis added)). Plaintiffs' TCPA claim is thus grounded in reproduction which is "an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch*, 373 F.3d at 305. That some of Plaintiffs' allegations concern the use of their voices or "distinctive identifiers" does not save the TCPA claim from preemption because it is "aimed at stopping the reproduction of copyrightable works that embody [Plaintiffs'] identity … not the independent use of [their] identity." *Melendez*, 50 F.4th at 308 (right of publicity claim preempted by Copyright Act); *see also Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 391 (Tenn. Ct. App. 2014) (TCPA claim based on use of plaintiff's photograph was preempted by Copyright Act).

Nor does the TCPA include an extra element that renders it qualitatively different from a copyright claim. The TCPA's deception requirement[4] and Plaintiffs' allegations that Udio "deceptively marketed these outputs as 'new' or 'original,'" Am. Compl. ¶ 404, do not alter the "nature" of the TCPA claim, *Jackson*, 972 F.3d at 43-44 ("An action will not be saved from preemption by elements ... which alter the action's scope but not its nature."); *see Cheairs v. Thomas*, 2023 WL 1442956, at *8 (W.D. Tenn. Feb. 1, 2023) ("Possible deception to consumers, by itself, is not enough to avoid preemption…."); *Briarpatch*, 373 F.3d at 306 (general scope prong satisfied where plaintiffs were attempting to enforce their right to prepare a derivative work despite that state law unjust enrichment claim also involved an enrichment element). At bottom, Plaintiffs'

---

[4]  To state a TCPA claim, a complaint must allege an "unfair or deceptive act or practice declared unlawful by the TCPA" and "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." *ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 833 (E.D. Tenn. 2024) (quotations omitted).

TCPA claim is "based solely on rights granted by the Copyright Act:" the right of reproduction and making derivative works. *Hamlin v. Trans-Dapt of California, Inc.*, 584 F. Supp. 2d 1050, 1062 (M.D. Tenn. 2008). This satisfies the "general scope" prong for preemption.

Applying this test, multiple courts have held that the TCPA is preempted by the Copyright Act. For example, the plaintiff in *Hamlin*, brought both a copyright infringement and TCPA claim against a defendant because the defendant's instructional sheet used text and photographs from the plaintiff's copyrighted manual. *Id.* at 1051-52. The court held the TCPA claim was preempted because it was "based solely on rights granted by the Copyright Act: that the defendant reproduced and distributed derivative works based on the plaintiff's copyrighted work." *Id.* at 1062; *see also Cheairs*, 2023 WL 1442956, at *7-9 (holding TCPA preempted where plaintiff's claims were "fundamentally about the unauthorized reproduction and distribution of her work"); *Whitehardt, Inc. v. McKernan*, 2016 WL 4091626, at *6 (M.D. Tenn. Aug. 2, 2016) (holding TCPA claim preempted by Copyright Act when it was "in essence, a reverse passing off claim"); *Patel v. Hughes*, 2014 WL 4655285, at *8 (M.D. Tenn. Sept. 16, 2014) (TCPA claim preempted when plaintiffs allegations were "precisely equivalent to the rights protected under the Copyright Act" (quotations omitted)).

Accordingly, Plaintiffs' TCPA claim is preempted by the Copyright Act.

**B.    Plaintiffs' TCPA Claim Fails To State A Claim**

Even if Plaintiffs' TCPA claim were not preempted, the Amended Complaint fails to state a TCPA claim. A TCPA claim has two elements: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." *ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 833 (E.D. Tenn. 2024) (quotations omitted). Only "unfair or deceptive act[s] or

practice[s]" specifically declared unlawful by Tenn. Code Ann. § 47-18-104(b) constitute a TCPA claim.  Tenn. Code Ann. § 47-18-109(a); *Integrity Def. Servs., Inc. v. WireMasters, Inc.*, 2024 WL 779593, at *4 (M.D. Tenn. Feb. 26, 2024) ("To state a viable claim under the TCPA, a plaintiff's claim must be based on one of the specific subsections of Tenn. Code Ann. § 47-18-104(b)." (quotations omitted)).

Plaintiffs do not identify which provision of Tenn. Code Ann. § 47-18-104(b) their TCPA claim is based on, which is a sufficient basis to dismiss the claim.  *See Rajapakse v. Internet Escrow Servs.*, 2022 WL 4783041, at *3 (E.D. Tenn. Sept. 30, 2022).  None of Plaintiffs' allegations fit into the list of unlawful acts in Tenn. Code Ann. § 47-18-104(b).  For example, copying Plaintiffs' "distinctive identifiers" or "misappropriat[ing] their brands" does not even arguably fall under any TCPA provision listed in the statute.  The Amended Complaint also fails to allege any output or action taken by Udio that is likely to cause confusion, *see* Tenn. Code Ann. § 47-18-104(b)(2), (3), or identify any output or statements by Udio that "[f]alsely pass[] off goods or services" as Plaintiffs', *id.* § (b)(1).

Additionally, TCPA claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  *See Hard Surfaces Sols., LLC v. Constr. Mgmt., Inc.*, 544 F. Supp. 3d 825, 830 (M.D. Tenn. 2021).  Plaintiffs thus "must state with particularity the circumstances constituting" their TCPA claim.  Fed. R. Civ. P. 9(b).  This requires at "minimum" that the Amended Complaint "specify the who, what, when, where, and how of the alleged fraud." *Blankenship v. Nissan N. Am., Inc.*, 2023 WL 4037150, at *5 (M.D. Tenn. June 15, 2023) (quotation omitted).  Yet Plaintiffs fail to provide any concrete details about their TCPA claim. Plaintiffs' conclusory allegations that "Udio deceptively marketed these outputs as 'new' or 'original,'" Am. Compl. ¶404, or "misrepresented the nature of its AI training practices," Am.

Compl. ¶ 406, do not come close to satisfying Rule 9(b) heightened pleading requirement, *see Hard Surfaces*, 544 F. Supp. 3d at 831-32 (dismissing TCPA claim when complaint lacked any "specific indication of who made what specific false statements" and "the alleged scheme [was] only defined in the vaguest of terms").

Still another ground for dismissal is Plaintiffs' failure to allege any ascertainable loss caused by Udio for conduct prohibited by the TCPA. Plaintiffs must plead "that defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated" with specificity. *ChampionX*, 726 F. Supp. 3d at 833 (quotations omitted). Plaintiffs' allegations that they "have suffered ascertainable losses" such as "lost licensing fees" or reduced streaming revenue do not meet this standard. *See id.* at 834 (dismissing TCPA claim where plaintiff made "no specific allegations of how [it] suffered harm"). Plaintiffs do not provide any factual allegations to support their conclusory claims of alleged losses. *See Waggin' Train, LLC v. Normerica, Inc.*, 2010 WL 145776, at *5 (W.D. Tenn. Jan. 8, 2010) (dismissing TCPA claim where plaintiff's alleged injury was to reputation and was "supported by no factual allegations in the complaint"). Nor do Plaintiffs provide any facts tying their alleged loss to Udio's actions. *Id.* at *4 ("[T]o establish a TCPA claim, a plaintiff must demonstrate that it actually has suffered damages that are more than conjectural, and that emanate from the defendant's unfair or deceptive actions.").

Accordingly, Plaintiffs' vague allegations do not state a TCPA claim, especially in light of Rule 9(b)'s heightened pleading standard.

## CONCLUSION

For the foregoing reasons, Udio respectfully requests that the Court grant its motion and dismiss counts two, three, and four of the Amended Complaint with prejudice.

DATED:    December 1, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: _/s/ Andrew Schapiro_____
Andrew Schapiro
William F. Patry
Jessica A. Rose
Dylan I. Scher
295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
andrewschapiro@quinnemanuel.com
williampatry@quinnemanuel.com
jessicarose@quinnemanuel.com
dylanscher@quinnemanuel.com

*Attorneys for Defendant Uncharted Labs,
Inc., d/b/a Udio.com*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, Andrew Schapiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 6,999 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed on this first day of December, 2025 in New York, New York.

By:  */s/ Andrew Schapiro*
       Andrew Schapiro