# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY JUSTICE and 5TH WHEEL RECORDS, INC. and MY HEARTLAND PUBLISHING, LLC, *each individually and on behalf of all others similarly situated*,<br><br>    *Plaintiffs*,<br><br><br>    v.<br><br><br>UNCHARTED LABS, INC., d/b/a Udio.com.,<br><br>    *Defendant* | Case No. 1:25-cv-5026 |

## PLAINTIFFS' MEMORANDUM OF LAW IN IN OPPOSITION TO DEFENDANT UNCHARTED LABS, INC. D/B/A UDIO.COM'S MOTION TO DISMISS COUNTS TWO, THREE, AND FOUR OF PLAINTIFFS' FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................II

TABLE OF AUTHORITIES ....................................................................................... III

I.   INTRODUCTION .................................................................................................. 1

II.  FACTUAL BACKGROUND .................................................................................. 4

III.  LEGAL STANDARD ............................................................................................ 6

IV.  ARGUMENT ......................................................................................................... 6

  A.  Plaintiffs Plausibly Allege Output Infringement.............................................. 6

    i.  Udio Misstates the Pleading Standard for Copyright Infringement ............................ 6

    ii.  Udio Incorrectly Interprets Early AI Decisions in Other Circuits............................... 9

    iii.  Pleading On "Information and Belief" is Common and Appropriate Here............... 10

  B.  Udio's Users Did Not Cause The Infringement ............................................. 11

  C.  Udio Circumvents Access Controls on YouTube and Other Platforms........................ 12

    i.  Plaintiffs Plausibly Allege Violation of § 1201(a) Through Udio's Circumvention of Access Controls on YouTube and Other Platforms.................................................... 12

    ii.  Udio's "Purpose" for Circumvention is Irrelevant Under § 1201(a)(1) .................... 16

  D.  Tennessee Unfair Competition..................................................................... 19

    i.  Amendment Is Proper Under Rule 15(a)(2) ............................................................. 19

    ii.  Tennessee Unfair Competition is Not Preempted by Copyright Law ........................ 21

V.  CONCLUSION ................................................................................................... 23

## TABLE OF AUTHORITIES

**CASES**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
307 F. Supp. 2d 1085, 1096 (N.D. Cal. 2004) ............................................................................ 17

*ABKCO Music, Inc. v. Sagan*,
50 F.4th 309, 321 (2d Cir. 2022) ............................................................................................... 13

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 858 (N.D. Cal. 2023) ........................................................................................ 2

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110, 120 (2d Cir. 2010) .............................................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ........................................................................................................ 2, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) .................................................................................................. 2, 6, 7

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167, 1175-76 (N.D. Cal. 2015) ....................................................................... 9

*Boykin v. KeyCorp*,
521 F.3d 202, 215 (2d Cir. 2008) .............................................................................................. 12

*Brainard v. Vassar*,
561 F. Supp. 922, 936–37 (M.D. Tenn. 2008) ...................................................................... 5, 24

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
373 F.3d 296, 306 (2nd Cir. 2004) ............................................................................................ 27

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
2022 WL 837596, at *3 (S.D.N.Y. Mar. 21, 2022) .................................................................... 15

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
536 F.3d 121, 131–33 (2d Cir. 2008) ........................................................................................ 14

*Chamberlain Group v. Skylink Tech., Inc.*,
381 F.3d 1178, 1194 (Fed. Cir. 2004) ....................................................................................... 20

*Citizens United v. Schneiderman*,
882 F.3d 374, 380 (2d Cir. 2018) .............................................................................................. 13

*Colpitts v. Blue Dimond Growers*,

527 F. Supp. 3d 562, 574 (S.D.N.Y. 2021)..................................................................... 7, 23

*Dean v. Cameron*,
53 F. Supp. 3d 641, 647 (S.D.N.Y. 2014) ................................................................. 12

*DiPilato v. 7-Eleven, Inc.*,
662 F. Supp. 2d 333, 342 (S.D.N.Y. 2009)..................................................................... 7

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848, 864–65 (9th Cir. 2017) ................................................................. passim

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
844 F.3d 79, 96 (2d Cir. 2016).................................................................................... 14

*Foman v. Davis*,
371 U.S. 178, 182 (1962)............................................................................................. 25

*Green v. United States Department of Justice*,
54 F.4th 738, 741 (D.C. Cir. 2022)............................................................................. 16

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
723 F.2d 195, 200-01 (2d Cir.1983), *rev'd on other grounds*,
471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)................................................ 26

*Hattler v. Ashton*,
2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) .......................................................... 22

*Kadrey v. Meta Platforms*,
23-cv-03417-VC, 788 F.Supp.3d. 1026 (N.D. Cal. Jun 25, 2025) .......................... 2, 11

*Lexmark International, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) ...................................................................................... 22

*McCray v. Lee*,
963 F.3d 110, 116 (2d Cir. 2020).................................................................................. 9

*Mdy Indus. Llc v. Blizzard Entm't. Inc.*,
629 F.3d 928, 947 U.S.P.Q.2d 1001 (9th Cir. 2011) .................................................. 18

*Murphy v. Millennium Radio Grp.*,
650 F.3d 295, 300 (3d Cir. 2011)........................................................................... 19, 20

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
299 F. App'x 509, 512 (6th Cir. 2008) .......................................................................... 9

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57, 64 (2d Cir. 2010)..................................................................................... 10

*Piper v. Chris-Craft Indus., Inc.*,

430 U.S. 1, 26 (1977) ............................................................................................. 22

*RealNetworks, Inc. v. Streambox, Inc.*,
No. 2:99-cv-02070, 2000 WL 127311, at *7 (W.D. Wash. Jan. 18, 2000) ................................ 21

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
81 F.2d 49 (2d Cir.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936) ............... 10

*State Teachers Ret. Bd. v. Fluor Corp.*,
654 F.2d 843, 856 (2d Cir.1981) ............................................................................ 25

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772, 778 (N.D.Cal. 2024) .................................................................. 12

*UMG Recordings, Inc. v. Kurbanov*,
2021 WL 6492907, *4 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*,
No. 1:18-cv-957, Doc. No. 144 (E.D. Va. Feb. 10, 2022) ................................................. 3, 18

*United States ex rel. Weiner v. Siemens AG*,
87 F.4th 157, 162-63 (2d Cir. 2023) ....................................................................... 22

*Universal City Studios Inc. v. Corley*,
273 F.3d 429, 442 (2nd Cir. 2001) ..................................................................... passim

*Walker v. Time Life Films, Inc.*,
784 F.2d 44, 50 (2nd Cir. 1986) ........................................................................... 10

*White v. DistroKid, LLC*,
766 F. Supp. 3d 451, 462 (S.D.N.Y. 2025) .................................................................. 14

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
633 F. Supp. 3d 650, 664–65 (D. Conn. 2022) .......................................................... 3, 18

**STATUTES**

17 U.S.C. § 106 ......................................................................................... 3, 9

17 U.S.C. § 1201(a) ................................................................................. 3, 12, 14

17 U.S.C. § 1201(c)(1) .................................................................................... 16

17 U.S.C. § 1201(d)-(j) .................................................................................... 4

**OTHER AUTHORITIES**

H.R.Rep. No. 105-551, pt. 1, at 17 (1998) .................................................................. 15

S. Rep. No. 105-190, at 8, 15 (1998) .................................................................... 13, 18

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................... 2, 6

## I.    INTRODUCTION

This case presents questions of profound consequence for thousands (if not millions) of independent music creators whose songs were scraped, used for training, and reproduced by Udio without permission, all to build an exact competing product. As the Second Circuit has observed, in an age where access to unlimited creative works "has blurred in some minds the fact that taking what is not yours and not freely offered to you is stealing," the strong right arm of equity remains essential. *Universal City Studios Inc. v. Corley*, 273 F.3d 429, 442 (2nd Cir. 2001). The Supreme Court has likewise condemned attempts to steal artists' life work to then simply repackage it into a competing commercial product.[1] Defendant's motion asks this Court to terminate most of this case at the pleading stage, before Plaintiffs can conduct discovery or present a record on behalf of absent class members who stand to lose their day in court if dismissal with prejudice is granted. The Court should deny the motion for the following reasons:

***First***, Udio asks this Court to adopt a rule no court has ever recognized - that AI companies evade liability unless the plaintiff attaches the infringing AI outputs at the pleading stage. For a closed box system that generates more than six million AI outputs *per week* (FAC, ¶ 74), this demand is unreasonable on its face, nor the required pleading standard. Udio seeks dismissal of Count 2 of Plaintiff's First Amended Complaint (hereafter "FAC") related to Udio's creation of infringing AI outputs containing Plaintiffs' sound recordings and musical compositions (Plaintiffs "songs").[2]  Udio does not seem to dispute that its AI model *has* repeatedly created infringing outputs based on the originals (FAC, ¶ 241), nor does it respond to the approximately 100 examples cited by Plaintiffs, demonstrating that Udio's system continuously reproduced copyrighted songs

---

[1] *See Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023) ("The same copying may be fair when used for one purpose but not another").

[2] "Plaintiffs" shall be defined herein to mean Plaintiffs, Class Members, and Subclass Members, as defined in Plaintiffs' FAC. "Subclass Members" shall mean only qualified Tennessee unfair competition members.

as an inherent *design feature* of its AI model.[3] FAC, ¶ 233.

Udio's Motion instead rests on a misstatement of the pleading standard, which only requires a "short and plain statement" showing entitlement to relief - not evidentiary proof. Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It also relies on early AI decisions in the Northern District of California which both rest on a categorical "all outputs are infringing" theory without an ability identify any concrete allegations of copying or substantial similarity after a full opportunity to conduct discovery. *Kadrey v. Meta Platforms, Inc.*, 23-cv-03417-VC, 5 (N.D. Cal. Jun 25, 2025); *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 774 (N.D. Cal. 2023). Plaintiffs have not had an opportunity to conduct discovery or obtain evidence contained solely in Udio's closed and proprietary platform, nor do Plaintiffs argue all AI outputs are infringing. The only issue before the Court is whether Plaintiffs plausibly allege that Udio created infringing derivative works based on Plaintiffs' songs. They have. Plaintiffs have more than met the plausibility standard, and Udio's "show me the outputs" argument is not the law. Dismissal is inappropriate at this stage.

**Second**, Udio's challenge to the DMCA claim fares no better. The motion selectively addresses only YouTube while ignoring detailed allegations of circumvention across multiple platforms. Plaintiffs allege circumvention under both §1201(a)(1) and §1201(a)(2), which the Motion never confronts. These omissions alone defeat dismissal.

Even as to YouTube, other courts have already rejected Udio's argument that "public access" converts an access control into merely a copy control under § 1201(a).[4] Udio even admits

---

[3] *See also UMG Recordings, Inc. v. Uncharted Labs, Inc.*, No. 24-04777, Amended Complaint, Doc. No. 119 (S.D.N.Y., originally filed June 24, 2024) (citing thousands of infringing AI outputs created by Udio) (the "Major Label Lawsuit")

[4] *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 664–65 (D. Conn. 2022) (holding that YouTube's rolling cipher qualifies as an access control under § 1201(a)(1)); *UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907, at *6–7 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022) (same).

that "the underlying digital file of the work is not freely accessible" on YouTube. Mot., p. 21. Udio's "partial access to the public equals no TPM" argument distorts § 1201(a), which expressly prohibits circumvention of *any* TPM that controls access to the underlying copyrighted work. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864–65 (9th Cir. 2017); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444 (2d Cir. 2001). A TPM that limits *if*, *how* or *under what circumstances* someone may access underlying content clearly controls access. *VidAngel, Inc.*, 869 F.3d at 864-65; *Corley*, 273 F.3d at 444. The DMCA sought to expand protection of copyrighted works in the digital age, not lessen them. *See* S. Rep. No. 105-190, at 8–9 (1998); *See also VidAngel*, p. 865 (Congress likely anticipated that a TPM "would be an access control measure despite involving 'a merger of access controls and copy controls'"). Especially now, in the age of generative AI and mass piracy. "Controlling access" is exactly what Youtube's rolling cipher does. FAC, ¶ 299. Applying Udio's interpretation of § 1201(a) would eviscerate DMCA protection and make YouTube and other platforms open season for infringers, inviting more mass piracy.

Finally, Udio's bare bones assertion that the DMCA permits "breaking the lock" of a TPM if the end purpose is fair use (Mot., p. 16) is simply wrong and ignores how even as to YouTube, circumventing YouTube's rolling cipher is not needed to make fair use of videos.[5] 17 U.S.C. § 1201(a) and 17 U.S.C. § 106 already operate in harmony without any need to break TPMs. What Udio means is hacking through locks and trafficking in devices to gain access to underlying files was the most efficient way for Udio to mass pirate Plaintiffs' songs. FAC, ¶ 12. However, "Fair use has never been held to be a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique…" *Corley*, 273 F.3d at 459. The Second Circuit observing: "[i]t would be strange for Congress to open small, carefully limited windows for circumvention to

---

[5] As discussed more herein, there are commonly used tools like Open Broadcast Software ("OBS") which provide users free, open-source software for online video screen recording, https://obsproject.com/, which YouTube does not prevent or block.

permit fair use," only to suggest elsewhere that *any* circumvention can be treated as a necessary evil in service of fair use. *Id.*; *see also* 17 U.S.C. § 1201(d)-(j). For all the foregoing reasons, Count 3 states a viable DMCA claim, and dismissal at this stage is improper.

**Third**, Subclass Members' Count 4, although inadvertently titled "Tennessee Consumer Protection Act" ("TCPA"), Subclass Members provide factual allegations under Tennessee common-law unfair competition, which protects against the misappropriation of another's labor and goodwill for commercial gain. *Brainard v. Vassar*, 561 F. Supp. 922, 936–37 (M.D. Tenn. 2008). Udio's conduct of repurposing Subclass Members' labor and identities to build a competing AI product constitutes competitive misappropriation, not mere copying, and is qualitatively different than Subclass Members' copyright infringement claims.[6] Subclass Members request amendment to correct the Count 4 citation, which otherwise relies on the same facts already plead, and ensures that the absent class members' valid state-law rights are preserved.

## II.    FACTUAL BACKGROUND

Plaintiffs are independent music creators and their respective recording companies. FAC, ¶¶ 49-58. Defendant Udio, Inc. ("Udio") operates an AI music generation service that generates AI songs through text prompts. FAC ¶¶ 1, 61-62, 115. Udio has admitted to scraping and duplicating a "large amount" of "publicly available" music "from the internet," including Plaintiffs' works. *Id.* ¶ 5, 70, 116-18. Udio not only copied Plaintiffs' songs; Udio unlawfully and repeatedly produced AI outputs containing verbatim or near-verbatim excerpts of pre-existing songs, including Plaintiffs' melodies, lyrics and instrumentals, including outputs that duplicate the voices of their creators. ¶ 13-4, 81, 86-8, 122-24, 147-49, 239-68, 275-83, 376-82 (the "Output Allegations"). Importantly, Plaintiffs do not assert that *every* output generated by Udio's AI

---

[6] Importantly, many of the Subclass Members **are not** asserting copyright infringement claims, and therefore, preemption pursuant to 17 U.S.C. § 303 is not applicable.

model(s) is an infringing work of their songs, and instead assert *certain* output were infringing derivative works. *Id.*, ¶ 83-4. Independent third parties have documented that these unauthorized derivative works were an intentional occurrence of Udio's actual design. *See* Output Allegations. Udio not only created exact replications, but created new versions based on the originals, commonly referred to in the music industry as "interpolations," which also requires permission. *Id.* ¶ 278-79. Not only has Udio's CEO, David Ding, acknowledged that Udio's goal is to create "music that sounds indistinguishable" from the music of human producers (*Id.* ¶ 125), but Udio's AI model was specifically designed to replicate the songs that it trained on to deliberately blur the line between Plaintiffs' songs and the AI outputs. *Id.*, *see also* ¶ 280-83.

Udio's misconduct extends beyond copyright infringement. Udio unlawfully accessed Plaintiffs' songs by circumventing the protections on numerous Protected Platforms enabled to control how copyrighted works may be accessed, viewed, and copied. *Id.*, ¶¶ 73, 130-34. In fact, the very reason Plaintiffs distribute their songs digitally is because TPMs exist that control access to their song and video files. *Id.,* ¶¶ 288-95. Plaintiffs rely on the Terms of Service provided by YouTube and other Protected Platforms that prohibit unlawful access by users. *Id.* While users typically may *stream* videos through web players, these Protected Platforms at no point give "free access" to the public to Plaintiff's underlying song and video files. ¶¶ 284-308. Plaintiffs allege that Udio intentionally bypassed technological protection measures deployed on YouTube, Spotify, Plaintiffs' websites, and other platforms, including YouTube's "rolling cipher," in order to obtain unauthorized access to underlying audio files. *Id.*

Subclass Members also allege that Udio used their creative labor and identities to develop a competing AI product, causing market harm and constituting unfair competition. *Id.* ¶¶ 31, 33-5, 47-8, 76-7, 80, 82, 106, 110-12, 121, 135-36, 149-50, 402-07.

## III.    LEGAL STANDARD

A complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "must deny a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him to relief." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 342 (S.D.N.Y. 2009) (internal brackets omitted). The Court "must accept all factual allegations in the complaint as true and draw inferences from the allegations in the light most favorable to the plaintiff." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 574 (S.D.N.Y. 2021).

## IV.    ARGUMENT

### A.    Plaintiffs Plausibly Allege Output Infringement

### i.    Udio Misstates the Pleading Standard for Copyright Infringement

Udio's motion rests on the incorrect premise that Plaintiffs must already possess the infringing outputs (Mot. 7, 13-4)—evidence exclusively in Udio's control. Rule 8 requires only a plausible claim, not production of evidence. Plaintiffs allege specific instances of reproduction and the mechanism by which Udio recreated their works. These facts more than satisfy *Twombly* and *Iqbal*. *Iqbal* at 678; *Twombly* at 555.

***First***, Udio does not dispute that its AI model is capable of exactly replicating the songs contained in its training dataset (*see* Output Allegations), that multiple independent sources have repeatedly exposed Udio for generating infringing AI outputs as a design feature of its AI model (*Id.*), nor that Udio in fact generated infringing AI outputs containing Plaintiffs' songs (*Id.*). Beyond that, Udio ignores that this is no ordinary copyright case. It involves a closed, high-volume AI model that generates more than six million outputs each week (*Id.*, ¶ 74), yielding

approximately five hundred million outputs generated to date. *Id.*, 114. Udio's insistence on identification of the infringing outputs without discovery is intentionally unrealistic. Plaintiffs exceed the pleading threshold by alleging, plausibly and in significant detail, over 100 examples of infringing Udio outputs containing copyrighted songs – with thousands of examples beyond that identified in the Major Label Lawsuit - demonstrating that such reproductions are ongoing and inherent to Udio's design. *See* Output Allegations. It is generally understood now that AI models sometimes reproduce their training dataset as an inherent feature of their design, which the Copyright Office acknowledged earlier this year.[7] FAC, ¶ 236. The Copyright Office's Report addresses that not only does generative AI produce "near exact replicas," but that [s]uch outputs likely infringe the reproduction right and, to the extent they adapt the original, the right to prepare derivative works." FAC, ¶ 236 (emphasis added); Report at 31.

Plaintiffs allege that Udio generated "near-exact replicas" of their copyrighted songs, including distinctive melodies and rhythms, and also provide a list of specific allegations as to each registered work trained on by Udio (*Id.*, ¶ 151-216).[8] However, this is a class action representing thousands (if not millions) of independent music creators comprising Plaintiffs (*Id.*, ¶¶ 4-7). This greatly matters in that discovery is the only mechanism available to Plaintiffs, who otherwise have no way of accessing the infringing AI outputs already generated for Udio's private users. Plaintiffs' well-pled facts show Plaintiffs' allegations are not hypothetical but concrete, good-faith allegations that Udio created unauthorized derivative based on Plaintiffs' songs. These allegations easily satisfy Rule 8(a)'s liberal pleading standard. *See McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) ("[T]he statement need only give the defendant fair notice of what the claim is

---

[7] United States Copyright Office, *Copyright and Artificial Intelligence, Part 3: Generative AI Training*, https://www.copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-3-Generative-AI-Training-Report-Pre-Publication-Version.pdf (the "Report") (last viewed December 2, 2025).
[8] To the extent what Udio really desires is for Plaintiffs to add an allegation as to each of the initial works identified by Plaintiffs in their FAC (*see* ¶¶ 151-216), Plaintiffs are willing to amend accordingly.

and the grounds upon which it rests" (internal quotation marks and ellipsis omitted)).

    ***Next***, Udio relies heavily on cases involving plaintiffs who failed to allege *any* factual connection between their copyrighted works and the accused material. For start, in *Nat'l Bus. Dev. Servs., Inc.*, the court dismissed the plaintiff's claim for its failure to allege any act of copying or identify a single infringing work. *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.,* 299 F. App'x 509, 512 (6th Cir. 2008). Conversely here, Plaintiffs describe in detail Udio's admission of large-scale scraping, ingestion, and the creation of "near exact replicas" of the songs in its' dataset, *which include Plaintiffs' songs*. *See* Output Allegations. Udio also relies on *Blizzard Ent., Inc.*, where the court dismissed because the plaintiffs only made generalized assertions that their characters were copied. *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.,* 149 F. Supp. 3d 1167, 1175-76 (N.D. Cal. 2015) (explaining that "[t]o avoid unwieldiness, courts have approved a complaint that simply alleges representative acts of infringement, rather than a comprehensive listing") (citing 3 M. D. Nimmer on Copyright § 12.09[A][2] (Rev. Ed.)). Here, by contrast, Plaintiffs identify approximately 100 examples of Udio outputs and provide detailed allegations describing reproduction of melodies, lyrics, instrumentals, and voices – precisely what *Blizzard* said would suffice.

    ***Third***, Udio argues that Plaintiffs have failed to plead substantial similarity with sufficient specificity (Mot., 11-4). However, the Second Circuit has recognized that determining substantial similarity is ordinarily a fact question reserved for summary judgment or trial, and that dismissal at the pleadings stage is not appropriate unless "the works in question are attached to the complaint," permitting the court to conduct the necessary comparison. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). Copyright infringement matters require the Court to actually compare the works, typically following full discovery. Even then, summary judgment is only appropriate after "a detailed examination of the works themselves." *Walker v.*

*Time Life Films, Inc.*, 784 F.2d 44, 50 (2nd Cir. 1986), citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).

Udio's own conduct underscores why such a determination cannot be made at the pleading stage. When confronted with numerous infringing AI outputs in the Major Label lawsuit, Udio initially claimed that the creator had "simply exploited a bug in the system that we already fixed." FAC ¶ 255; Major Label Lawsuit at 59. Udio's current silence on this prior admission only reinforces the plausibility of Plaintiffs' allegations and the need for discovery - particularly where the evidence of infringement lies within Udio's closed platform. Plaintiffs have plausibly alleged unauthorized derivative reproduction under 17 U.S.C. §§ 106(2) and are entitled to discovery. Udio's Motion should therefore be denied.

### ii.    Udio Incorrectly Interprets Early AI Decisions in Other Circuits

Udio then relies on early Northern District of California AI decisions, which Plaintiffs can easily distinguish from their case. In *Kadrey*, the court granted a summary judgment on the issue of fair use because after full discovery, the plaintiffs could not show any outputs substantially similar to their works or evidence of market harm. *See Kadrey*, 23-cv-03417-VC, at 40. "[C]ourts …must decide based on the arguments presented and the *evidence submitted* by the parties." *Id*. at 32.[9] There, the court conducted an actual comparison between the AI outputs and the original works, which were available after the parties' conducted discovery. *Id.* at 4-5. The *Kadrey* court reluctantly granted summary judgment based on a lack of substantial similarity, but stated "in the grand scheme of things, the consequences of this ruling are limited. This is not a class action, so the ruling only affects the rights of these thirteen authors-not the countless others whose works

---

[9] The *Kadrey* court remarked: "companies have been unable to resist the temptation to feed copyright-protected materials into their models without getting permission from the copyright holders or paying them for the right to use their works for this purpose. This case presents the question whether such conduct is illegal… in most cases the answer will likely be yes." *Id* at 1; FAC, ¶ 29.

[defendant] used to train its models on." *Id.* (emphasis added). Plaintiffs' case is a class action that seeks the rights of a nationwide class of independent music creators – precisely the "countless others" the *Kadrey* court recognized as similarly harmed and left without any remedy. Plaintiffs not only allege substantial market harm but also have had no opportunity to conduct discovery and obtain the evidence Udio exclusively controls.

The *Tremblay* decision is also distinguishable and rested on a categorical "all outputs are infringing" theory and failed to present concrete allegations of copying or substantial similarity after an opportunity to conduct discovery. *Tremblay,* 716 F. Supp. 3d, 778. Here, Plaintiffs do not allege that every output generated by Udio's AI model(s) is an infringing output of Plaintiffs' songs. *Id.*, ¶ 83-4. Plaintiffs allege that Udio generated specific AI outputs that constitute infringing derivative works of their songs. *Id.* Plaintiffs cannot access Udio's closed black-box system but nonetheless have concrete and plausible allegations - supported by Udio's own admissions - showing that infringing reproductions have already occurred. Udio's request for a substantial-similarity test is premature at the pleading stage. *Dean v. Cameron*, 53 F. Supp. 3d 641, 647 (S.D.N.Y. 2014) (finding "it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss" but only when the court has the actual works to compare (quotation omitted)).

### iii.    Pleading On "Information and Belief" is Common and Appropriate Here

Udio next attacks Plaintiffs' use of "information and belief," asserting Plaintiffs only make general and conclusory statements related to evidence of infringing outputs. Mot., pp.13-4. However, pleading "upon information and belief" is entirely proper under *Twombly* where, as here, the relevant facts lie exclusively within the defendant's possession. *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008). Plaintiffs' pleading based on information and belief is not "circumstantial evidence" or conclusory (Mot., p. 14) but a necessary and accepted mechanism, when, in this case,

Udio alone controls the training data, internal logs, and output files needed to confirm the full

extent of copying. *See Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (allegations

based on information and belief sufficient where the pleading simply calls for enough facts to raise

a reasonable inference). It is sufficient for a complaint to "raise a reasonable expectation that

discovery will reveal evidence of illegal[ity]," even if a defendant insists the proof is inaccessible

at the pleading stage. *Id.*; accord, *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir.

2018).

In short, the cases cited by Udio stand for the unremarkable proposition that plaintiffs who

neither allege copying nor identify expressive overlap after discovery cannot proceed. Here,

Plaintiffs have plausibly alleged copying and reproduction, and that the evidence needed for

comparison remains solely in Udio's possession. Their claims must proceed to discovery.

## B.  UDIO'S USERS DID NOT CAUSE THE INFRINGEMENT

Udio argues that its users "pressed the button" and therefore bear sole responsibility for

any infringing outputs. Mot. at 15. However, the Second Circuit looks at who caused the alleged

infringement, not whose fingertip touches the interface. *See ABKCO Music, Inc. v. Sagan*, 50 F.4th

309, 321 (2d Cir. 2022) ("[d]irect liability requires 'volitional conduct' that 'causes' the copying

or distribution') (citation omitted). Unlike Udio's platform, the cases cited in the Motion discuss

passive service providers, whose systems merely transmit or store content chosen by users,

automatically and without any independent expressive or generative role. *See Cartoon Network

LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131–33 (2d Cir. 2008). The *Cartoon Network* court

analogized a cable operator to a store owner who charges customers to use a photocopier on its

premises. *Id*. at 132. The store owner does not "make" any copies when the machine is operated

by the customers, and therefore not seen to have "pressed the button." *Id*.; *see also White v.

DistroKid, LLC*, 766 F. Supp. 3d 451, 462 (S.D.N.Y. 2025) (finding no direct liability where the

platform did not itself choose or create the infringing music but merely distributed tracks uploaded by users).

These cases do not address Udio's conduct. Unlike passive service providers, Udio's system itself determines the expressive content of every output and users only provide short text prompts. FAC, ¶ 61, 115.  It is Udio's AI model itself that determines every AI output, which is designed to "mirror," "recreate," and "reproduce" Plaintiffs' songs. *See* Output Allegations; *see also White* at 459 ("the Second Circuit has found that the operator of an automated system that copies copyrighted material without a request from the user may be held to have engaged in volitional conduct and thus to have violated the Copyright Act.").  (emphasis added); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 96 (2d Cir. 2016) (the court finding "volitional conduct" where the system retried a copyrighted item that a user did not request, frequently without the user's knowledge of the copyrighted nature of the item). A platform like Udio is indeed liable for infringing activities if it has a "deliberate role" in the alleged infringement, such that the platform morphed form a "passive provider of a space in which infringing activities happen to occur on an active participant in the process of copyright infringement." *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *3 (S.D.N.Y. Mar. 21, 2022).

Here, Plaintiffs plausibly allege that Udio built a system deliberately intended to replicate Plaintiffs' songs, creating infringing AI outputs. Dismissal is not appropriate at this stage and Udio cannot blame its users based on a "but they pressed the button" theory.

### C.  UDIO CIRCUMVENTS ACCESS CONTROLS ON YOUTUBE AND OTHER PLATFORMS

### i.    Plaintiffs Plausibly Allege Violation of § 1201(a) Through Udio's Circumvention of Access Controls on YouTube and Other Platforms

Udio argues YouTube's videos are freely streamable – meaning "accessible" to the public, so therefore, no "access control" exists under § 1201(a)(1). *See* Mot. at 21-2. Udio argues that the

"fact that the underlying digital file of the work is not freely accessible does not transform the rolling cipher into an access control." *Id.* Udio not only acknowledges that the underlying song files contained in YouTube videos are not accessible to the public, but Udio's "partial access to the public equals no TPM" argument also misstates both the statute and relevant case law. Section 1201(a)(1) does not require a technological measure to absolutely bar access to a work to trigger DMCA protection.

A TPM "controls access" when it sets *any* barrier or condition on reaching the underlying copyrighted content. *See, e.g.*, *VidAngel*, 869 F.3d at 864-65; *Corley*, 273 F.3d at 441-44. Congress intentionally chose the word *control* and not *prevent* so rightsholders could embrace online distribution while still retaining meaningful restrictions on how their works are accessed.[10] *See also* S. Rep. No. 105-190, at 8, 15 (1998). Congress sought to protect copyrighted works in "the rapid and dynamic development of better technologies. *Id*. The DMCA was designed to enable lawful and controlled online consumption, not to make works free for the taking.

Udio trained on essentially all music files it could obtain from the internet (FAC ¶ 393), including files from multiple Protected Platforms, not only YouTube. Udio's Motion addresses only a fraction of Plaintiffs' DMCA allegations. *See* FAC ¶¶ 39, 64–69.

| 1201(a)(1)<br>Unlawful Access | Copy Control Circumvention | Access Control Circumvention |
|---|---|---|
| YouTube | Addressed by Udio | Addressed by Udio |
| Plaintiffs' Websites | *Not addressed by Udio* | *Not addressed by Udio* |
| Other Protected Platforms (e.g., Spotify, | *Not addressed by Udio* | *Not addressed by Udio* |

---

[10] In the 1990s, a growing number of tools facilitated "massive piracy" by increasing "the ease with which digital works [could] be copied and distributed worldwide virtually instantaneously." S. Rep. No. 105-190, at 8 (1996). Congress feared that "copyright owners [would] hesitate to make their works readily available on the Internet without reasonable assurances that they [would] be protected." *Id*. In order to provide protection in the digital age, Congress enacted the DMCA, which "backed… the efforts of copyright owners to protect their works from piracy." *Green v. United States Department of Justice*, 54 F.4th 738, 741 (D.C. Cir. 2022).

| Amazon Music) | | |
|---|---|---|

| 1201(a)(2)<br>Unlawful Trafficking | N/A | Access Control<br>Circumvention |
|---|---|---|
| **YouTube** | *N/A* | *Not addressed by Udio* |
| **Plaintiffs' Websites** | *N/A* | *Not addressed by Udio* |
| **Other Protected<br>Platforms (e.g., Spotify,<br>Amazon Music)** | *N/A* | *Not addressed by Udio* |

Beyond the narrow scope of Udio's YouTube-only analysis, accessing a platform pursuant to consumer-facing terms of service does not confer a license to break additional encryption measures designed to prevent piracy, which is exactly what YouTube's access controls aim to do. *Id.*, ¶¶ 132-33. Authorized streaming under § 106(4) is not authorization to decrypt, download, or reproduce the underlying audio files. See 17 U.S.C. § 1201(a)(3)(A); *VidAngel*, 869 F.3d at 863. Courts repeatedly hold that TPMs "control access" even when they allow **some** lawful access.

A series of DVD encryption cases confirm the point: defeating CSS violates § 1201(a) even though purchasers may watch DVDs on licensed players. *See, e.g.*, *VidAngel*, Inc., 869 F.3d at 863–65; *Corley*, 273 F.3d at 441-44*; 321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1096 (N.D. Cal. 2004). As these courts explained, the DVD Content Scramble System is an access control because it allows users to view protected works only through authorized devices, while preventing users from obtaining unrestricted access to the underlying files. *See VidAngel* at 864–65 (explaining that "only authorized [DVD] players get those keys" that unlock the DVD's content).

The same fact pattern exists here. YouTube permits lawful streaming but restricts access to the underlying audio and video files through its rolling cipher. FAC, ¶ 287. Courts addressing

YouTube's rolling cipher have already rejected Udio's arguments. In *Yout*, the court held that YouTube's TPM "controls access" to copyrighted files because it restrains a user's ability to reach the location where downloadable audio files are stored and download them, even though streaming is permitted. *Yout,* 633 F. Supp. 3d at 664–65. The *Yout* court expressly *rejected* the claim that a rolling cipher cannot qualify as an access control simply because "some" access through public streaming is allowed. *Id*. at 662-68. While YouTube videos contain a "play" button, they do not readily offer a "download" button for users to access the internal audio or video file. *Id*. at 666. Likewise, the *Kurbanov* court determined that bypassing the same youtube-dl application violated § 1201(a)(1) because it "does not allow users to download the videos or audio files streamed on the watch pages." *Kurbanov*, 2021 WL 6492907, *4 (E.D. Va. Dec. 16, 2021). These decisions directly undermine Udio's position.

Plaintiffs allege circumvention on Spotify, Plaintiffs' websites, and other major music platforms, none of which Udio addresses. FAC ¶¶ 64–69. As to YouTube, Plaintiffs' references to "stream ripping" do not convert the cipher into a mere "copy control."[11] Instead, Udio's conduct constitutes the "electronic equivalent of breaking into a locked room" to seize the book inside. *Mdy Indus. Llc v. Blizzard Entm't. Inc.*, 629 F.3d 928, 947 U.S.P.Q.2d 1001 (9th Cir. 2011) (*citing* H.R.Rep. No. 105-551, pt. 1, at 17 (1998)); *see also Murphy v. Millennium Radio Grp*., 650 F.3d 295, 300 (3d Cir. 2011) (explaining that where a studio encrypts a DVD so it "cannot be copied without special software or hardware," and a user using his own software then "crack[s]" that encryption to make unauthorized copies, the DMCA permits circumvention liability for defeating a 'technological measure' designed to 'control … access to' the DVD.")

---

[11] Udio argues that since Udio downloaded "copies" of the video and audio files, YouTube's encryption should be viewed as a mere "copy control." Mot. at 19. However, Udio had to illicitly defeat access restrictions to surgically extract Plaintiffs' audio files from their protected video environments. The fact that Udio engaged in this invasive process underscores that the encryption was operating as an access control, and that Udio broke it.

Plaintiffs further allege that Udio violated § 1201(a)(2) by trafficking in tools designed to decrypt and extract protected media (FAC ¶ 11). Udio does not dispute this prong at all.

### ii.    Udio's "Purpose" for Circumvention is Irrelevant Under § 1201(a)(1)

Although only briefly mentioned, Udio argues that even if it *did* circumvent YouTube's technological protection measures, circumvention is permitted under § 1201(a) if the end purpose is fair use. Mot. 18-9.

***First***, Udio's argument fails because § 1201(a)(1) prohibits the act of circumvention itself, regardless of what the user intends to do afterwards. The statutory text contains no purpose-based limitation. The DMCA's anticircumvention provisions, §§ 1201(a)-(b), create independent causes of action for liability and expressly distinguish circumvention from copyright infringement: "Nothing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title." 17 U.S.C. § 1201(c)(1).[12] While a user may invoke fair use as a defense to copyright infringement, that defense does not excuse unlawful circumvention under § 1201. *Chamberlain Group v. Skylink Tech., Inc.*, 381 F.3d 1178, 1194 (Fed. Cir. 2004).

Courts have repeatedly rejected arguments that circumvention escapes § 1201(a)(1) liability merely because the defendant sought to make a copy. In *VidAngel*, for example, the defendant argued it did not violate the DMCA because its decryption of DVDs was done only to copy, and not to "view" the movies. The Court squarely rejected that reasoning, holding that a TPM may function as *both* an access control and a copy control, and that liability attaches to the

---

[12] Udio's "fair use" arguments are wrong on both the law and the equities. Congress expressly accounted for fair use in enacting § 1201 by creating explicit statutory exemptions and establishing a triennial rulemaking process before the Copyright Office to identify additional exemptions as needed. See, e.g., 17 U.S.C. § 1201(a)(1)(B)-(D) (directing the Library of Congress to conduct triennial rulemakings to exempt classes of works whose users may be "adversely affected … in their ability to make noninfringing uses"); id. § 1201(d)-(j) (codifying exemptions for specified uses); id. § 1201(c)(1) (preserving the fair-use defense to infringement). Udio ignores this comprehensive statutory scheme entirely.

act of bypassing the access restrictions regardless of subsequent copying. *VidAngel*, 869 F.3d at 864. A defendant who "decrypts the TPMs and then also reproduces that work [ ] is liable for both circumvention in violation of § 1201(a)(1) and copyright infringement in violation of § 106(1)." *Id.*; *see also Murphy*, 650 F.3d at 300. The same result follows here.

Moreover, Udio fails to address Plaintiffs' separate allegations of trafficking violations under § 1201(a)(2) as it relates to its fair use argument.

*Next*, Udio incorrectly argues that treating YouTube's rolling cipher as an access control prevents fair use. Mot., at 16. However, a user may make fair use of YouTube videos through screen-recording tools, such as OBS,[13] which create exact copies of publicly displayed videos without accessing the underlying files. Unlike subscription platforms such as Hulu or Netflix, which use DRM to block copying even after lawful access,[14] YouTube allows screen-recording but prohibits decryption of its underlying audio/video files. FAC ¶ 387.  Rather than "just copy" using a tool like OBS, Udio had to defeat YouTube and other Protected Platform's "Secret Handshake," to gain access to the underlying files.[15]

Udio's demand for a "fair use purpose" analysis is nothing more than an attempt to legitimize its preferred method of mass-scraping Plaintiffs' songs, despite violating § 1201(a)(1) and § 1201(a)(2). *Corley*, 273 F.3d at 459 ("[f]air use has never been…a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique…"). Importantly,

---

[13] *How to Use OBS Screen Capture*, Restream, available at https://restream.io/learn/obs-studio/how-to-use-obs-screen-capture/ (last accessed November 7, 2025).

[14] Digital Rights Management ("**DRM**") encryption prevents not only the downloading of underlying files, but also the capturing of the video stream itself - resulting in a blank or black screen if a user attempts to screen record playback; *see How to Record Netflix with OBS |A Step-by-step Guide*, available at https://democreator.wondershare.com/screen-recorder/how-to-record-netflix-with-obs.html (last accessed November 7, 2025) (… "Netflix uses a special DRM protection technology to prevent its streaming from copyright infringement").

[15] *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99-cv-02070, 2000 WL 127311, at *7 (W.D. Wash. Jan. 18, 2000) (discussing how DRM encryption that both protects access to a work by requiring a "Secret Handshake" to view it, and separately protects against unauthorized copying of a work by using a "Copy Switch" to prevent a user from recording a copy as the file is streamed violated § 1201).

Udio fails to cite to any case holding that a TPM controlling access loses that status when circumvention facilitates copying. Instead, Udio provides a bare bones argument that Congress declined to prohibit circumvention of "copy controls" to preserve fair-use copying. Mot, 16. However, banning *access control* circumvention was the only thing necessary for Congress to do, because copyright infringement remedies already existed. As the Senate Report explains, § 1201(a)(1) was enacted because "prior to this Act, the conduct of circumvention was never before made unlawful," whereas "copyright law has long forbidden copyright infringements, so no new prohibition [on circumventing copy controls] was necessary." S. Rep. No. 105-190, at 12.

Udio's reliance on *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004), highlights the lack of support for its position. There, the court held that an authentication sequence was not an access control because the program at issue was already readable "with or without" that sequence. 387 F.3d at 546. In other words, there was no gated access at all. Here, Plaintiffs' audio and video files are not readable or downloadable without defeating YouTube's rolling cipher—the precise feature missing in *Lexmark*. Nor does *Hattler v. Ashton*, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017), support Udio's position. As a threshold matter, *Hattler* predates VidAngel and is likely no longer good law, and is distinguishable because the plaintiff alleged only that defendants circumvented controls on works "not available by lawful download at any source," without evidence of how the TPMs operated or were bypassed. *see also id*. at *5 n.2.

Because neither the statute nor precedent supports its position, Udio relies almost entirely on legislative history to manufacture a bright-line divide between access controls and copy controls. But "a statute's legislative history cannot overcome the plain meaning of the text." *United States ex rel. Weiner v. Siemens AG*, 87 F.4th 157, 162-63 (2d Cir. 2023) (internal quotation marks omitted); *see also Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 26 (1977) ("Reliance on legislative

history . . . is a step to be taken cautiously."). Nor is Udio's characterization of the legislative history accurate. Here, Udio seeks to invert the DMCA independent liability structure by elevating its asserted fair-use rationale into a blanket authorization to bypass encryption whenever doing so would speed up its business practices. This immense logical leap that a fair use purpose grants a license to pry open digital locks is not the law.

The legislative history supports the alternative narrative: that Congress sought to prevent duplicative liability, and fair use remains available for those who lawfully obtain access; § 1201(a)(1) bars only those who break through access controls to take what they were never permitted to reach.[16] If Udio truly believed its copying was defensible, it could have lawfully acquired Plaintiffs' songs through purchase, license, or other authorized means. What § 1201(a)(1) forbids is not the copying - it is the lock-picking itself. Udio's mass scraping does not qualify for fair use, but even if it did, allowing fair use to excuse violation of § 1201 would gut the DMCA's core protection and reward the very circumvention Congress sought to deter. At this stage, Udio cannot resolve the highly factual questions its theory depends on - how each TPM on YouTube and other Protected Platforms operates, and how they were bypassed. At the pleading stage, the Court is required to accept those allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See Colpitts*, 527 F. Supp. 3d at 574. If Udio disputes that YouTube's TPMs function to limit access in this fashion, such factual questions are properly explored in discovery and addressed on summary judgment or trial.

### D. TENNESSEE UNFAIR COMPETITION

#### i. Amendment Is Proper Under Rule 15(a)(2)

Udio argues that Count 4 fails because it invokes the TCPA (Tennessee Consumer

---

[16] The DMCA already contains multiple safeguards to ensure that lawful users retain the ability to make non-infringing uses of lawfully accessed works, including through the triennial rulemaking process and express statutory exemptions. See 17 U.S.C. § 1201(a)(1)(B)–(D), (d)–(j).

Protection Act), which does not permit class actions under Tennessee law. Mot. at 23. However, the citation to TCPA was inadvertent. Count 4 is, and was always intended to be, Subclass Members' common-law unfair competition claim, although mistakenly pled otherwise. Subclass Members point to the continuous references and claims of unfair competition made throughout their FAC. *See, e.g.,* FAC ¶¶ 31, 33-5, 47-8, 76-7, 80, 82, 106, 110-12, 121, 135-36, 149-50, 402-07.

Subclass Members allege Udio built its model by exploiting the labor of Subclass Members by bypassing existing, voluntary opt-in licensing systems already used by other AI competitors, such as ElevenLabs. *Id*. This existing market for AI licensing demonstrates that Udio could have trained its models while fully compensating creators for their labor and identities. *Id*. Instead, Udio deliberately took the fruits of that labor and misappropriated their identities in order to build a competing commercial AI product. *Id*. Udio benefited from the misappropriation of Subclass Members' actual labor as independent music creators. *Id*.[17] Tennessee has recognized that unfair competition encompasses any recognized wrong that improperly interferes with another's business prospects. This distinct tort extends to the theft of creative content. *Brainard*, 561 F. Supp. 2d, 936–37 (M.D. Tenn. 2008). A plaintiff must prove that: (1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization. *Brainard* at 937.

---

[17] Udio's bad-faith intent is further confirmed by its investors' admissions that "the only practical way generative AI models can exist is if they can be trained on an almost unimaginable large amount of content, much of which… will be subject to copyright. FAC, ¶ 120. Combined with the CEO's admission that Udio scraped a "large amount of publicly-available and high-quality music" from the internet without any attempt to properly negotiate any deal for the use of Plaintiffs' voices and songs, Udio's intention was always to unfairly compete by exploiting Plaintiffs' labor and diminishing the market value of Plaintiffs' services and goods. *Id*., ¶ 121.

Establishing a brand and identity as a music creator is a substantial feat. For example, Plaintiff Tony Justice is a full-time truckdriver, but has nonetheless has successfully sold over 100,000 albums, earned over 21 Million YouTube views, and amassed a significant social media following as an independent music creator. FAC, ¶¶ 49.52. Taking the labor and voices of another and labeling it as his or her own can be said to have exhibited "conduct which 'passed off' it's...services as that of the plaintiff." By repurposing Plaintiffs' identities and labor by building a competing commercial AI platform, Udio passed off the fruits of Subclass Members' labor as its own, gaining a commercial advantage through competitive misappropriation. Tennessee law recognizes such exploitation of another's creative effort as unfair competition. *Id.* at 936–37.

Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave should be denied only upon a showing of undue delay, bad faith, futility, or prejudice. *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). None of those factors apply here. The amendment merely clarifies the intended legal theory; it does not alter the operative facts or the scope of discovery. Defendant has been on notice from the outset that Plaintiffs challenge Udio's use of their brands, voices, and identities to develop an AI music platform that competes with them directly. Because the amendment causes no prejudice or delay, leave should be granted.

### ii.    Tennessee Unfair Competition is Not Preempted by Copyright Law

Subclass Members - many of whom lack copyright registrations and therefore are not asserting copyright infringement[18] (FAC, ¶ 60, 108) - nonetheless lawfully market and license their songs and brands in the open marketplace. *Id.*, ¶¶ 82, 106, 108, 112. Udio's conduct devalued their brands and deprived them of attribution while Udio reaped the commercial benefits of their labor

---

[18] Meaning, the 17 U.S.C. §303 analysis is not applicable to all Sublcass Member because they are not asserting copyright infringement claims. Preemption is therefore not applicable.

for its own commercial enterprise. *Id.* This constitutes unfair competition and competitive misappropriation, not copyright infringement: the injury lies in the unfair market advantage Udio obtained by using Plaintiffs' creative identity and output to compete against them.

The Second Circuit consistently holds that a state-law claim survives preemption where it includes an *extra element* that does not "lie within the general scope of copyright" and adds something to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action. *Harper & Row, Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 200-01 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (Section 301 preempts only those state law rights that "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights" provided by federal copyright law); 1 Nimmer § 1.01[B], at 1-14-15. To determine whether a claim is qualitatively different, we look at "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." Computer Associates Intern., Inc. v. Altai, Inc., 982 F.2d 693, 716 (2nd Cir. 1992). On the other hand, a state law claim is qualitatively different if it requires such elements as breach of fiduciary duty or possession and control of chattels, *see Harper & Row*, 723 F.2d at 201; *Briarpatch Ltd. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2nd Cir. 2004). Because Plaintiffs' claim centers on Udio's unfair market advantage related to its competing AI platform, which was built using Plaintiffs' artistic labor, rather than on infringement of copyrighted works, the common-law tort is not preempted and states a viable independent cause of action.

To the extent the Court concludes that any of Plaintiffs' factual allegations require further detail, Plaintiffs respectfully request leave to supplement those allegations and cure any perceived deficiencies. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires").

## V.    CONCLUSION

For the foregoing reasons, dismissal is improper at this stage for Count 2 (copyright infringement), Count 3 (violation of the DMCA), and amendment of Count 4 (unfair competition) is appropriate. Plaintiffs respectfully request that the Court deny Udio's Motion to Dismiss in its entirety and allow this case to proceed to discovery. Alternatively, Plaintiffs request leave to amend to address any deficiencies in the FAC.

Dated: December 15, 2025

*/s/ Krystle Delgado*
Krystle Delgado, AZ Bar No. 031219
*Pro Hac Vice Admission*
**Delgado Entertainment Law, PLLC**
6803 E Main St # 1116
Scottsdale, AZ 85251
Telephone: 480-248-0657
krystle@delgadoentertainmentlaw.com

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey, Texas Bar No. 24040864
*Pro Hac Vice Admission*
**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone: (888) 350-3931
jellzey@eksm.com

*/s/ Josh Sanford*
Josh Sanford, Arkansas Bar No. 2001037
*Pro Hac Vice Admission*
**SANFORD LAW FIRM, PLLC**
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
josh@sanfordlawfirm.com

***Attorneys for Plaintiffs and the Proposed Class***

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, Krystle Delgado, an attorney duly admitted to practice before this Court, hereby certify pursuant to the Local Civil Rule 7.1 that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 7,997 (no more than 8,750) words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by the Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on December 15, 2025.

By: */s/ Krystle Delgado*
     Krystle Delgado