UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY JUSTICE and 5TH WHEEL RECORDS, INC., and MY HEARTLAND PUBLISHING, LLC, *each individually and on behalf of all others similarly situated*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>UNCHARTED LABS, INC., d/b/a Udio.com,<br><br>    *Defendant*. | Case No. 1:25-cv-05026-AKH<br><br>Hon. Alvin K. Hellerstein<br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**DEFENDANT UNCHARTED LABS, INC., D/B/A UDIO.COM'S REPLY
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS
TWO, THREE, AND FOUR OF THE FIRST AMENDED COMPLAINT PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ..............................................................................................................2

I.     Count II Of The Amended Complaint Fails To State A Copyright Infringement Claim As To Output...................................................................................................2

     A.    Plaintiffs' Opposition Confirms They Have Not Identified Or Described Any Infringing Output..........................................................................2

     B.    The Amended Complaint Fails To Allege Udio Engaged In Volitional Conduct ................................................................................................5

II.    YouTube Employs A Copy Control And Plaintiffs' Arguments To The Contrary Misunderstand Section 1201 .............................................................................6

III.   Plaintiffs' Newfound Unfair Competition Claim Fails.......................................10

     A.    Plaintiffs Cannot Assert A *New* Claim In Their Opposition Brief .........11

     B.    Plaintiffs' Unfair Competition Claim Is Preempted By The Copyright Act..........12

     C.    Plaintiffs Fail To State An Unfair Competition Claim............................13

CONCLUSION........................................................................................................15

## TABLE OF AUTHORITIES

### Cases

*Andersen v. Stability AI Ltd.*,
    744 F. Supp. 3d 956 (N.D. Cal. 2024) ..................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 3, 9

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
    149 F. Supp. 3d 1167 (N.D. Cal. 2015) ................................................................ 3

*Brainard v. Vassar*,
    561 F. Supp. 2d 922 (M.D. Tenn. 2008) ............................................................. 14

*Brainard v. Vassar*,
    625 F. Supp. 2d 608 (M.D. Tenn. 2009) ......................................................... 12, 14

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2nd Cir. 2004) .............................................................................. 13

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008) ................................................................................ 5

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ................................................................................ 4

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v.*
    *Ryanair Holdings plc*,
    2022 WL 4377898, at *2 (S.D.N.Y. Sept. 22, 2022) ......................................... 11

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
    982 F.2d 693 (2d Cir. 1992) ................................................................................ 13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) .............................................................................................. 14

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ............................................................................. 7, 8

*Dunn v. Commodity Futures Trading Comm'n*,
    519 U.S. 465 (1997) ............................................................................................ 9

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
    844 F.3d 79 (2d Cir. 2016)..................................................................................5

*Foman v. Davis*,
    371 U.S. 178 (1962) ....................................................................................... 11

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    723 F.2d 195 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985)........... 13

*Justice v. Suno, Inc.*,
    No. 1:25-cv-11739-FDS (D. Mass. Nov. 10, 2025) ........................................ 11

*Kadrey v. Meta Platforms, Inc.*,
    2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ..................................................4

*Kadrey v. Meta Platforms, Inc.*,
    788 F. Supp. 3d 1026 (N.D. Cal. 2025) ...........................................................4

*Lambertini v. Fain*,
    2014 WL 4659266 (E.D.N.Y. Sept. 17, 2014) ..................................................3

*Matthew Bender & Co. v. W. Pub. Co.*,
    158 F.3d 693 (2d Cir. 1998) ............................................................................6

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
    629 F.3d 928 (9th Cir. 2010), *as amended* (Feb. 17, 2011)...........................6, 8

*Moore v. Weinstein Co., LLC*,
    2012 WL 1884758 (M.D. Tenn. May 23, 2012) .......................................13, 14

*Murphy v. Millennium Radio Group*,
    650 F.3d 295 (3d Cir. 2011) ............................................................................7

*Nat. Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*,
    299 F. App'x 509 (6th Cir. 2008).....................................................................3

*New York Wheel Owner LLC v. Mammoet Holding B.V.*,
    481 F. Supp. 3d 216 (S.D.N.Y. 2020) ............................................................ 11

*Panizza v. Mattel, Inc.*,
    2003 WL 22251317, at *3 (S.D.N.Y. Sept. 30, 2003) ..................................... 13

*PHG Techs., LLC v. St. John Cos., Inc.*,
    459 F. Supp. 2d 640 (M.D. Tenn. 2006)...................................................13, 14

*Piuggi v. Good for You Prods. LLC*,
    739 F. Supp. 3d 143 (S.D.N.Y. 2024) ..............................................................2

*Sovereign Ord. of Saint John of Jerusalem, Inc. v. Grady*,
    119 F.3d 1236 (6th Cir. 1997) .................................................................... 13

*Thomas v. Carter*,
    581 F. Supp. 3d 651 (S.D.N.Y. 2022) ........................................................ 3

*Tremblay v. OpenAI, Inc.*,
    716 F. Supp. 3d 772 (N.D. Cal. 2024) ........................................................ 4

*Tremblay v. OpenAI, Inc.*,
    742 F. Supp. 3d 1054 (N.D. Cal. 2024) ................................................ 12, 13

*UMG Recordings, Inc. v. Kurbanov*,
    2021 WL 6492907 (E.D. Va. Dec. 16, 2021) ............................................. 7

*United States v. Kozeny*,
    541 F.3d 166 (2d Cir. 2008) ........................................................................ 8

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ........................................................................ 7

*Vanderbilt Univ. v. Scholastic, Inc.*,
    382 F. Supp. 3d 734 (M.D. Tenn. 2019) .................................................. 14

*Whitehardt, Inc. v. McKernan*,
    2016 WL 4091626 (M.D. Tenn. Aug. 2, 2016) ...................................... 12, 13

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ...................................................................... 11

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
    633 F. Supp. 3d 650 (D. Conn. 2022) ......................................................... 6

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
    No. 22-2760 (2d Cir.) .................................................................................. 7

*Ziff Davis, Inc. v. OpenAI, Inc.*,
    2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) .......................................... 12

## **Statutes**

17 U.S.C. § 101 .............................................................................................. 6

17 U.S.C. § 106 ............................................................................................ 12

17 U.S.C. § 1201 .......................................................... 1, 2, 6, 7, 8, 9, 10

<u>**Other Authorities**</u>

Fed. R. Civ. P. 15(a) ................................................................................................................ 11

*Gain,* Merriam Webster, https://www.merriam-webster.com/dictionary/gain (last
    accessed Dec. 16, 2025) .................................................................................................... 8

Defendant Uncharted Labs, Inc., d/b/a Udio.com ("Udio") respectfully submits this Reply Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **PRELIMINARY STATEMENT**

Plaintiffs' opposition ("Opp.") confirms that Counts II, III, and IV should be dismissed. As to Count II, Plaintiffs are required to identify particular Udio-generated outputs that they contend infringe the copyrighted works asserted in this case. In addition, Plaintiffs must explain in detail why those allegedly infringing outputs are substantially similar to their sound recordings and/or musical compositions. Plaintiffs have done neither. Plaintiffs offer only the speculative theory that Udio is *capable* of producing outputs that infringe their works.[1] These allegations are insufficient to state a claim of copyright infringement. Count II also fails for another independent reason: Plaintiffs concede that allegedly infringing outputs are generated by user's prompts and therefore have failed to allege that Udio engaged in volitional conduct, a required element of direct infringement.

As to Count III, Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim under 17 U.S.C. § 1201(a), Plaintiffs' opposition cannot change the immutable fact that the rolling cipher described in the Amended Complaint is a copy control and not an access control under the statute. Content on YouTube is freely available for anyone to view without restriction. YouTube's placement of the underlying file behind a technological protection measure ("TPM") to prevent copying does not constitute an access control because Section 1201(a) concerns TPMs that protect the copyrighted expression in the work, *i.e.*, the content—not the file. Treating the rolling cipher

---

[1] Contrary to Plaintiffs' representation, Opp. 6, Udio does dispute that its model is capable of and has generated output that is identical to Plaintiffs' songs, Mot. 2. However, that is not the point of this motion.

as an access control collapses the statue's intentional distinction between access controls and copy controls.  Because the DMCA only prohibits the circumvention of access controls, not copy controls, Plaintiffs fail to state a claim under Section 1201(a).

Finally, Plaintiffs have abandoned their Tennessee Consumer Protection Act ("TCPA") claim, arguing in their opposition that they actually meant to bring a common law unfair competition claim.  The law does not permit Plaintiffs to alter their claim through their briefing. In any event, Plaintiffs' unfair competition claim is preempted by the Copyright Act because the gravamen of their claim is that Udio copied their works to train its AI model and created output that replicates their songs.  This claim also fails on the merits because the acts alleged do not constitute common law unfair competition.

## ARGUMENT

I.    **Count II Of The Amended Complaint Fails To State A Copyright Infringement Claim As To Output**

A.    **Plaintiffs' Opposition Confirms They Have Not Identified Or Described Any Infringing Output**

Plaintiffs' opposition confirms that they have not identified, let alone described, any allegedly infringing outputs.  While Plaintiffs are not required to attach the accused output at the motion to dismiss stage, Opp. 1, to state a claim they are required to identify the infringing output and allege substantial similarity between that output and a specific copyrighted work owned by Plaintiffs.  *See Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 162 (S.D.N.Y. 2024) (plaintiff "has the burden of properly alleging h[is] claim, which includes ... identifying with some degree of specificity how Defendant[s'] works are substantially similar to h[is] own") (alterations in original) (quotations omitted).  Plaintiffs cite no cases where a copyright claim survived a motion to dismiss where the complaint failed to identify or describe the allegedly infringing content.  The fact that this case involves AI, Opp. 6-7, is no reason to let Plaintiffs' claim proceed

upon pure speculation that Udio's service could potentially, in theory, generate outputs that are substantially similar to Plaintiffs' copyrighted works. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Dismissing for failure to allege substantial similarity is not "premature," and there is no need to proceed to discovery. Opp. 8-10. Plaintiffs argue that "dismissal at the pleadings stage is not appropriate unless 'the works in question are attached to the complaint.'" Opp. 8-9. That is not the law. Courts frequently dismiss claims for failure to allege substantial similarity between the accused and asserted works, even when the works are not before the court. *See, e.g.*, *Thomas v. Carter*, 581 F. Supp. 3d 651, 656 (S.D.N.Y. 2022) (dismissing copyright claim where plaintiff's "complaint does not demonstrate how his registered songs are similar" and plaintiff's allegations that defendants "infringed" on his works was a conclusion of law); *Lambertini v. Fain*, 2014 WL 4659266, at *4 (E.D.N.Y. Sept. 17, 2014) (dismissing copyright claim where plaintiff made only "vague and broad allegation" of similarity).

Plaintiffs' attempt to distinguish Udio's cases only confirms that their complaint is deficient. Plaintiffs correctly point out, Opp. 8, that the Sixth Circuit affirmed dismissal of a copyright claim for failure to identify any infringing work. *Nat. Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511-12 (6th Cir. 2008). That is exactly what Plaintiffs do here; they fail to identify or describe a single infringing output. And just like the plaintiffs in *Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175-76 (N.D. Cal. 2015), Plaintiffs here make only "generalized assertions" of copying. Opp. 8; *see, e.g.*, Am. Compl. ¶¶ 38, 86, 267, 280, 376. Contrary to Plaintiffs' suggestion, Opp. 8, nowhere

in *Blizzard* did the court say that allegations of similarity to other rightsholders' works would be sufficient to state a claim.[2]

As to the AI output cases, Plaintiffs' respond to a different *Kadrey* case than the one Udio relied on in its motion. *See* Opp. 9-10 (distinguishing summary judgment decision *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025)). Plaintiffs make no attempt to distinguish the decision Udio actually cited. *See Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023) (dismissing copyright claim where complaint contained "no allegation of the contents of any output"). Additionally, although Plaintiffs here do not bring an "all outputs are infringing" theory, Opp. 10, they, like the plaintiffs in *Tremblay v. OpenAI, Inc.*, "fail to explain what the outputs entail or allege that any particular output is substantially similar – or similar at all – to their [works]," 716 F. Supp. 3d 772, 778 (N.D. Cal. 2024).[3]

Plaintiffs cannot invoke "upon information and belief" to salvage their conclusory allegations because such pleading is only permissible when "the facts are peculiarly within the possession and control of the defendant." *Citizens United v. Schneiderman*, 882 F.3d 374, 385 (2d Cir. 2018) (quotations omitted). The Amended Complaint belies Plaintiffs' contention that any facts are peculiarly within Udio's possession because it alleges Udio's platform is available for anyone to use, including Plaintiffs, to attempt to create substantially similar outputs. Am. Compl. ¶¶ 62, 145. Although Plaintiffs repeatedly assert that Udio produced "near exact replicas" of their works, Opp. 7-8, the Amended Complaint is completely devoid of allegations identifying or

---

[2] Although Plaintiffs cite to their allegations that Udio has produced work resembling *other* rightsholders' songs throughout their opposition, Plaintiffs do not otherwise respond to Udio's argument that these allegations are insufficient to state a claim as to Plaintiffs. Mot. 8.

[3] Additionally, Plaintiffs misrepresent *Tremblay*. The *Tremblay* plaintiffs did not "fail[] to present concrete allegations of copying or substantial similarity *after* an opportunity to conduct discovery." Opp. 10 (emphasis added). *Tremblay* was a motion to dismiss case that was decided *before* discovery.

describing such replicas. This Court should not allow Plaintiffs' claim to survive when they cannot point to a single infringing output or explain how any work is substantially similar to Plaintiffs' songs.

**B.  The Amended Complaint Fails To Allege Udio Engaged In Volitional Conduct**

Plaintiffs argue that Udio engaged in volitional conduct because its platform is "designed" to replicate Plaintiffs' songs. Opp. 12. Udio denies its platform is designed to produce outputs that infringe Plaintiffs' works, but even if that were true, it still would not constitute volitional conduct because Udio only generates songs at a user's request. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131-132 (2d Cir. 2008). In *Cartoon Network*, the Second Circuit held the defendant did not engage in volitional conduct despite "designing, housing, and maintaining a system that exists only to produce a copy." *Id.* at 131. Even where copying is an "instrumental" function of a defendant's platform, a defendant does not engage in volitional conduct when the copy comes from a system that "automatically obeys" users' commands. *Id.*

Plaintiffs' position, Opp. 12, finds no support in *EMI Christian Music Group, Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016). In *EMI*, users uploaded music to the defendants' platform. 844 F.3d at 86. If the uploaded music file did not have cover art, the defendants' system was designed to automatically retrieve the cover art associated with the song from Amazon and download the art to the defendants' servers. *Id.* at 87, 96. The Second Circuit held this constituted volitional conduct because, although the user's upload triggered the system to retrieve the cover art, the user did not request the cover art. *Id.* at 96. By contrast, here, Plaintiffs allege that the purportedly infringing output is generated by user's prompts; they do not allege any output is created without a prompt. *See, e.g.*, Am. Compl. ¶¶ 61, 115. In other words, to generate music, Udio's model "automatically obeys" the prompts inserted by a user. *Cartoon Network*, 536 F.3d at 131. Accordingly, the "conduct that causes the copy to be made" is the user's—not Udio's. *Id.*

## II.    YouTube Employs A Copy Control And Plaintiffs' Arguments To The Contrary Misunderstand Section 1201

Plaintiffs' opposition largely ignores the multiple allegations in their own complaint that describe YouTube's rolling cipher as preventing downloading and copying.  *See, e.g.*, Am. Compl. ¶¶ 296-98.  That is because a TPM that prevents downloading and copying is a copy control and the DMCA does not prohibit the circumvention of copy controls.  *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 945 (9th Cir. 2010), *as amended* (Feb. 17, 2011).  Despite alleging a copy control, Plaintiffs now attempt to cast the rolling cipher as an access control by arguing that, although YouTube videos are available for streaming for anyone to listen to or watch, the underlying audio and video file is protected by the rolling cipher.  Opp. 14-15.  That argument fails.

Section 1201(a) is clear.  It concerns TPMs that protect the "work"; it says nothing about the underlying file.  *See, e.g.*, 17 U.S.C. § 1201(a)(1)(A) ("No person shall circumvent a technological measure that effectively controls access to a **work protected under this title**."), (a)(3)(B) ("a technological measure 'effectively controls access to a work' if the measure … requires the application of information, or a process or a treatment … to gain access to the **work**.") (emphases added).  The "work" in the copyright context means the expressive content that a copyright protects—such as the text of a book or the sounds captured by a sound recording.  *See* 17 U.S.C. § 101; *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 702 (2d Cir. 1998) ("The Copyright Act establishes a 'fundamental distinction' between the original work of authorship and the material object in which that work is 'fixed.'").

Plaintiffs cite no cases (other than *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650 (D. Conn. 2022)) in which a court found a defendant circumvented an access control when the work was publicly available and only the "file" was not.  But the *Yout* court was

6

wrong to conclude that the rolling cipher was an access control and that decision is currently on appeal in the Second Circuit. *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, No. 22-2760 (2d Cir.).[4]  *UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021) does not support Plaintiffs' position.  The *Kurbanov* court did not suggest YouTube's rolling cipher was an access control.  Opp. 15.  Rather, as discussed in Udio's opening memorandum, *Kurbanov* held that a plaintiff stated a Section *1201(b)* claim when it alleged that the defendant's website allowed users to circumvent YouTube's rolling cipher so as to download and extract the copyrighted content.  2021 WL 6492907 at *4-5, 7-8.

Plaintiffs' reliance on the DVD line of cases is equally misplaced.  Contrary to Plaintiffs' representation, those cases do not hold that the TPM on DVDs (the Content Scrambling System or "CSS") "is an access control because it … prevent[s] users from obtaining unrestricted access to the underlying files."  Opp. 14.  Those cases say nothing about the "underlying files."  *Id.*  The DVD cases hold CSS is an access control because it blocks anyone who does not have a "[DVD] player[] from [a] licensed manufacturer[]" from watching the "***content***" of the DVD.  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 853 (9th Cir. 2017) (emphasis added).  The content of a DVD is thus not available without the "key" to unlock the encryption.  *Id.* at 853 n.1, 864.  In other words, CSS is an access control because it "***prevents*** access by unauthorized persons to DVD ***movies***."  *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 437, 452 (2d Cir. 2001) (emphasis added).[5]  By contrast, the content of a YouTube video is publicly available for anyone to see and

---

[4]  The Second Circuit recently accepted an amicus brief on this issue and invited the parties to file supplemental briefs in response.  *See Yout LLC v. Recording Indus. Ass'n. of Am.*, No. 22-2760, ECF 124, 127, 129, 141 (2d Cir.).

[5]  Plaintiffs also rely on *Murphy v. Millennium Radio Group*, 650 F.3d 295, 300 (3d Cir. 2011). Opp. 15.  The *Murphy* court incorrectly described the encryption on "a DVD so that it cannot be copied without special software or hardware" as an access control.  *Murphy*, 650 F.3d at 300.  The *Murphy* court conflated CSS's status as an access control with its status as a copy control.  CSS

does not require a "key." *See* Am. Compl. ¶¶ 73, 287.  Plaintiffs' allegations are thus far from "the same fact pattern," Opp. 14, as those of the DVD cases.

To the extent Plaintiffs argue that a TPM is an access control when it sets "any barrier or condition" on "how … works are accessed" because the statute says "controls access" and not "prevents access," Opp. 13, Plaintiffs fail to "give effect … to every clause and word of" Section 1201(a), *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008).  Section 1201(a) defines a "technological measure [that] 'effectively controls access to a work'" as one that "requires the application of information, or a process or a treatment … to **gain** access to the work."  17 U.S.C. § 1201(a)(3)(B) (emphasis added).  "Gain" means "to acquire or get possession of usually by industry, merit, or craft."  *Gain,* Merriam Webster, https://www.merriam-webster.com/dictionary/gain (last accessed Dec. 22, 2025).  Thus, an access control is not just "any barrier or condition"—it must limit one's ability to "acquire" or "get possession" of the work, *i.e.*, an access control **prevents** access to the work.

Udio does not "rel[y] almost entirely on legislative history to manufacture a bright-line divide between access controls and copy controls."  Opp. 18.  The distinction between access controls and copy controls is a function of the statutory text and structure.  *See MDY Indus.*, 629 F.3d at 946 ("[W]e read the differences in structure between § 1201(a) and (b) as reflecting Congress's intent to address distinct concerns by creating different rights with different elements.").  The clear implication of Section 1201's statutory scheme—treating access controls and copy controls differently—is that there must be some category of copy controls that can be

---

functions as both a copy control and access control; it is a copy control because it prevents copying but is an access control because it prevents access without an authorized player.  *See VidAngel*, 869 F.3d at 865.  In any event, *Murphy* is not about Section 1201 and thus that inaccurate statement was also dicta.

freely circumvented because they are not also access controls. Plaintiffs' interpretation—where an access control is one that permits access to the work but prevents copying—allows no room for that category and thus leaves no use for Section 1201(b). That cannot be. *See Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997) ("legislative enactments should not be construed to render their provisions mere surplusage").

Discovery is not required because, contrary to Plaintiffs' argument, Opp. 19, there is no dispute about how YouTube's rolling cipher functions nor any "highly factual question" for the court to decide. Both parties agree that YouTube makes the videos publicly available but places the audio and visual file behind the rolling cipher to prevent downloading and copying. *See, e.g.*, Am. Compl. ¶¶ 287, 298-99, 303. The only dispute is a legal one: do Plaintiffs allege an access control or a copy control?

In an attempt to save their flawed claim, Plaintiffs raise a series of distracting and meritless arguments. First, Plaintiffs spend nearly four pages responding to a strawman. Opp. 16-19. Nowhere in Udio's motion did it argue that "circumvention is permitted under § 1201(a) if the end purpose is fair use" or did it "demand for a 'fair use purpose' analysis." Opp. 16-17. Udio mentioned fair use only in the context of explaining why Congress opted to treat access controls and copy controls differently. Mot. 10, 12-13.

Second, Plaintiffs argue that Udio did not address their allegations that Udio circumvented access controls on platforms other than YouTube. Opp. 13-14. But Plaintiffs do not adequately allege Udio circumvented any TPM on another platform. Aside from passing references to Spotify, the Amended Complaint never names those other platforms or describes their TPMs. *See* Am. Compl. ¶¶ 39, 353, 357. Thus, any allegation that Udio circumvented those unidentified

platforms' unspecified TPMs is conclusory and lacks sufficient facts to state a Section 1201(a) claim. *See Twombly*, 550 U.S. at 570.

Similarly, Plaintiffs cursorily argue that they stated a claim under Section 1201(a)(2) for trafficking. Opp. 16-17. But Plaintiffs couch their trafficking allegations as part of their circumvention allegations. *See* Am. Compl. ¶¶ 12, 306. In any event, to the extent Plaintiffs were attempting to state an independent trafficking claim under Section 1201(a)(2), the Amended Complaint does not contain any allegations as to how Udio "manufacture[d], import[ed], offer[ed] to the public, provide[d], or otherwise traffic[ked] in any technology" that is designed to circumvent an access control. 17 U.S.C. § 1201(a)(2). Without any substantive details, Plaintiffs' mere invocation of the word "traffic" is too conclusory to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In any event, a Section 1201(a)(2) claim also fails for the same reasons Plaintiffs' 1201(a)(1) claim fails: Plaintiffs do not allege YouTube employs an access control.

## III.    Plaintiffs' Newfound Unfair Competition Claim Fails

Plaintiffs have abandoned their TCPA claim entirely, insisting the claim was "inadvertent"—notwithstanding that Count Four references the TCPA statute five times. Opp. 20; *see* Am. Compl. ¶¶ 399-408. Instead, they argue that they meant to assert a "common law unfair competition claim" and even suggest that Udio should have discerned their true intent from the "continuous references and claims of unfair competition." Opp. 20. Plaintiffs appear to base their newfound unfair competition claim on two theories: (a) that Udio used Plaintiffs' works to build its AI platform, and (b) that Udio created outputs that resemble Plaintiffs' works. This pivot fails under either theory because (1) Plaintiffs may not amend their pleadings through briefing; (2) even

if this Court were to entertain Plaintiffs' newly asserted common law claim, it is not adequately pleaded; and (3) the claim is preempted by the Copyright Act.

### A.    Plaintiffs Cannot Assert A *New* Claim In Their Opposition Brief

Rather than defend their TCPA claim, Plaintiffs manufacture in their briefing an entirely new claim of common law unfair competition.  *See* Opp. 19-21.  This claim appears nowhere in the operative pleading.  Plaintiffs may not cure these fatal pleading defects by amending through briefing.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("party may not amend pleading through statements in briefs") (internal citation omitted); *New York Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216, 236 n.2 (S.D.N.Y. 2020) (granting motion to dismiss where plaintiff "changes course" in its opposition brief by advancing a new theory not pleaded in the complaint).

Plaintiffs' claim of inadvertence is also implausible.  Over one month ago, in a class action advancing similar claims against a different defendant, Plaintiffs offered the same excuse for the identical drafting error:  they claimed that "[t]he citation to TCPA (FAC, p.6) was <u>inadvertent</u>" and their TCPA claim was actually a common-law unfair competition claim.  *Justice v. Suno, Inc.*, 1:25-cv-11739-FDS, ECF No. 33 at 24 (D. Mass. Nov. 10, 2025) (emphasis in original).  This pattern belies any claim of inadvertence (and might suggest a lack of candor with this Court).  Plaintiffs' conduct bars any further amendment under Fed. R. Civ. P. 15(a).[6]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave may be denied for "undue delay, bad faith or dilatory motive"); *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings*

---

[6]   Udio reserves the right to fully challenge any subsequent motion filed by Plaintiffs requesting leave to amend.

*PLC*, 2022 WL 4377898, at *2 (S.D.N.Y. Sept. 22, 2022) ("Bad faith also exists where the earlier decision not to plead additional allegations was a tactical one.") (internal quotations omitted).

### B.    Plaintiffs' Unfair Competition Claim Is Preempted By The Copyright Act

In any event, Plaintiffs' unpled unfair competition claim would be preempted by the Copyright Act.  Plaintiffs' training theory is preempted because it alleges nothing more than unauthorized reproduction—conduct that is squarely covered by the Copyright Act.  Plaintiffs argue that Udio unfairly competed by "bypassing existing, voluntary opt-in licensing systems" to train its AI model and "misappropriated [Plaintiffs'] identities in order to build a competing commercial AI product."  Opp. 20.  Stripped of rhetoric, their theory is simple:  Plaintiffs claim that Udio copied their songs without authorization.  That is duplicative of their Count I claim and sounds exclusively in copyright law.  *See* 17 U.S.C. § 106(1).  Plaintiffs' training theory involves no "extra element" beyond what is required for copyright infringement—that is, proof of actionable copying.  *See Ziff Davis, Inc. v. OpenAI, Inc.*, 2025 WL 3635559, at *3-4 (S.D.N.Y. Dec. 15, 2025) (holding state law claim based on using plaintiffs' works to train AI model was preempted); *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1058-59 (N.D. Cal. 2024) (same); *Andersen v. Stability AI Ltd*., 744 F. Supp. 3d 956, 972 (N.D. Cal. 2024) (same).

Plaintiffs' output theory is similarly preempted.  To the extent Plaintiffs allege that Udio's outputs resemble and thus compete with their works, this complaint too sounds in copyright.  *See* 17 U.S.C. § 106(2).  A state law claim premised on the creation of outputs that allegedly copy Plaintiffs' works seeks to vindicate the same rights protected by copyright law and is thus preempted.  *See Brainard v. Vassar*, 625 F. Supp. 2d 608, 622 (M.D. Tenn. 2009) ("*Brainard II*") (holding unfair competition claim that "defendants used the plaintiffs' [songs] as their own" preempted); *Whitehardt, Inc. v. McKernan*, 2016 WL 4091626, at *5-6 (M.D. Tenn. Aug. 2, 2016) (dismissing reverse passing off unfair competition and TCPA claims as preempted).

Plaintiffs cannot save their unfair competition claim from preemption by arguing that their "injury lies in the unfair market advantage Udio obtained." Opp. 22. First, Plaintiffs do not make that allegation in the Amended Complaint. Second, that Plaintiffs claim a particular form of injury does not alter the fact that their claim is based on the unauthorized copying of Plaintiffs' songs.[7] *See Tremblay*, 742 F.Supp.3d at 1058-59 (claimed harm of "distort[ing] the legal marketplace" did not save state claim from preemption because it "only describe[s] the harms that resulted from Plaintiff's unauthorized use and copyright of Plaintiffs'" work).

Finally, Plaintiffs cannot avoid preemption merely because certain Subclass Members "lack copyright registrations." Opp. 21, 21 n.18. "[T]he preemptive reach of the Copyright Act encompasses state law claims concerning uncopyrightable material." *Panizza v. Mattel, Inc.*, 2003 WL 22251317, at *3 (S.D.N.Y. Sept. 30, 2003).

### C.    Plaintiffs Fail To State An Unfair Competition Claim

In any event, Plaintiffs fail to state an unfair competition claim. Preliminarily, "[a] Tennessee unfair competition claim generally arises in the context of trademark infringement"— not copyright infringement. *Whitehardt*, 2016 WL 4091626, at *4. Unfair competition requires, among other elements, that "the defendant engaged in conduct that 'passed off' its organization or services as that of the plaintiff." *Moore v. Weinstein Co., LLC*, 2012 WL 1884758, at *45 (M.D. Tenn. May 23, 2012) (citing *Sovereign Ord. of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1243 (6th Cir. 1997)). Plaintiffs fail to allege any "passing off." They do not allege any

---

[7]    Plaintiffs' cases (Opp. 22) support that the unfair competition claim is preempted. *See Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (holding state law claim preempted); *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983) (same), *rev'd on other grounds*, 471 U.S. 539 (1985). The other case confirms that Plaintiffs' claim is preempted. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) ("unfair competition … claims grounded solely in the copying of a plaintiff's protected expression are preempted").

specific instance of an Udio-generated song that Udio attempted to "pass off." *See PHG Techs., LLC v. St. John Cos., Inc.*, 459 F. Supp. 2d 640, 645 (M.D. Tenn. 2006) (dismissing unfair competition claim for failure to allege passing off). To the contrary, Plaintiffs' briefing confirms that, at most, they have alleged reverse passing off. *Compare* Opp. 21 (arguing that "Udio passed off the fruits of Subclass Members' labor as its ***own***") (emphasis added), *with Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (reverse passing off is when "[t]he producer misrepresents someone else's goods or services as his own").

Reverse passing off cannot state a claim for common law unfair competition. Tennessee courts recognize common law unfair competition in "two circumstances": (1) where the defendant "'passed off' its product or service as that of the plaintiff" and where "an employee used confidential information to his employer's detriment." *PHG Techs.*, 459 F. Supp. 2d at 644 (assuming *arguendo* that unfair competition could extend beyond passing off and confidential information misuse to include intentional interference); *see also Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 754-56 (M.D. Tenn. 2019) (only recognizing reverse passing off for *Lanham Act* unfair competition claims). *Brainard v. Vassar*, 561 F. Supp. 2d 922, 937 (M.D. Tenn. 2008) ("*Brainard I*") (Opp. 20) is not to the contrary. Although there the court held that the plaintiffs had stated an unfair competition claim by alleging that the defendants labeled the plaintiffs' song as their own, that court did not consider whether plaintiffs had actually alleged a reverse passing off claim. *Brainard I*, 561 F. Supp. 2d at 937. The court subsequently recognized that reverse passing off does *not* constitute unfair competition and dismissed the claim at the summary judgment stage in part because there was no evidence the "defendants attempted to pass off their work as actually being the work of the plaintiffs." *Brainard II*, 625 F. Supp. 2d at 622.

14

Plaintiffs also have not alleged the remaining elements. Plaintiffs do not allege that Udio intended to deceive the public as to the source of its services, or that any member of the public was confused or deceived. *See Moore*, 2012 WL 1884758, at *45.

After abandoning their TCPA claim, Plaintiffs cannot repackage their allegations into a common-law claim for which they lack any factual or legal basis. This Court should dismiss Count IV regardless of whether it is construed as arising under the TCPA or common law.

## **CONCLUSION**

For the foregoing reasons, Udio respectfully requests that the Court grant its motion and dismiss Counts II, III, and IV of the Amended Complaint with prejudice.

DATED:    December 22, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: _/s/ Andrew Schapiro_____
Andrew Schapiro
William F. Patry
Jessica A. Rose
Dylan I. Scher
295 5th Avenue
New York, New York 10016-7103
(212) 849-7000
andrewschapiro@quinnemanuel.com
williampatry@quinnemanuel.com
jessicarose@quinnemanuel.com
dylanscher@quinnemanuel.com

*Attorneys for Defendant Uncharted Labs, Inc., d/b/a Udio.com*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, Andrew Schapiro, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 4,717 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed on this twenty second day of December, 2025 in New York, New York.

By: _/s/ Andrew Schapiro_
   Andrew Schapiro