**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY JUSTICE and 5TH WHEEL RECORDS, INC., MY HEARTLAND PUBLISHING, LLC, *each individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>Uncharted Labs, Inc., d/b/a Udio.com,<br><br>Defendant. | Civil Action No: 1:25-cv-05026-AKH |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION RELATED TO COUNT IV OF ITS FIRST AMENDED COMPLAINT PURSUANT TO LOCAL RULE 6.3**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………………ii

TABLE OF AUTHORITIES………………………………………………………………..iii

MEMORANDUM OF LAW…………………………………………………………………...1

   I.    INTRODUCTION……………………………………………………………...1

   II.   LEGAL STANDARD………………………………………………………….2

   III.  ARGUMENT…………………………...……………………………………...3

     A.   Count IV Was Not Preempted Because It Failed To Satisfy
The Second Prong Of The *Briarpatch* Test…………………………...……………..3

     B.   *Midler*, *Waits*, And *Jackson* Confirm That Identity And
Persona-Based Claims Are Distinct From Copyright Claims…………………………..7

     C.   Amendment Of Plaintiffs' Complaint Would Not Have Been Futile…………………...9

   IV.  CONCLUSION……………………………………………………………………10

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………………3

*B & L Corp. v. Thomas & Thorngren, Inc.*,
917 S.W.2d 674, 681 (Tenn. Ct. App. 1995)……………………………………………...7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)……………………………………..3

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004)……………………………………………………………….3

*Brown v. Ames*, 201 F.3d 654, 657-58 (5th Cir. 2000)…………………………………………...8

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693, 716 (2d Cir. 1992)………………………………………………………….4

*Dade Int'l, Inc. v. Iverson*, 9 F. Supp. 2d 858,
862 (M.D. Tenn. 1998)……………………………………………………………………6

*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007,
1027 (3d Cir. 2008)………………………………………………………………………..8

*Foman v. Davis*, 371 U.S. 178, 182 (1962)…………………………………………..3 & 9

*Hamlin v. Trans-Dapt of California, Inc.*,
584 F. Supp. 2d 1050 (M.D. Tenn. 2008)…………………………………………………6

*Handwerker v. AT&T Corp.*, 285 F. Supp. 2d 331,
332 (S.D.N.Y. 2002)……………………………………………………………..………..2

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
723 F.2d 195, 200 (2d Cir. 1983)…………………………………………………………4

*Jackson v. Roberts*, 972 F.3d 25 (2d Cir. 2020)………………………………...……....8 & 9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160, 191 (2d Cir. 2015)…………………………………………………………9

*Midler v. Ford*, 849 F.2d 460, 463 (9th Cir. 1988)……………………………………..6 & 7

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
681 F.3d 114, 118 (2d Cir. 2012)…………………………………………………………9

*Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274,
276 (2d Cir. 2006)…………………………………………………………………………..10

*Titan Cloud Software, LLC v. Moore*,
3:24-cv-00400 (M.D. Tenn. Dec 12, 2024)……………………………………………..7

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245, 1255 (2d Cir.1992)……………………………………………………..3

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1100 (9th Cir. 1992) ……………………...…5 & 8

*Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562,
573–76 (1977)…………………………………………………………….…………….1

**STATUTES**

17 U.S.C. §§ 102……………………………………………………………………….…3

17 U.S.C. §§ 103……………………………………………………………………….3

17 U.S.C. § 106…………………………………………………………………3 & 5

**OTHER AUTHORITIES**

1 Nimmer on Copyright § 1.01[B][1][a]1-17……………………………………………..4

§ 106 of the Copyright Act………………………………………………………………..2

§ 301 of the Copyright Act……………………………………………………………2, 10

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 132…………………………………………….8

**RULES**

Fed. R. Civ. P. 12(b)(6)………………………………………………………………….3

Fed. R. Civ. P. 15(a)(2)………………………………………………………………….3

Local Civil Rule 6.3……………………………………………………………1, 2 & 11

COMES NOW, Plaintiffs, Anthony Justice and 5th Wheel Records, Inc., My Heartland Publishing, LLC (collectively the "**Plaintiffs**")[1], who by and through counsel, respectfully move this Court, pursuant to Local Civil Rule 6.3, for reconsideration of the portion of its order and opinion dated May 21, 2026, Doc. 52 (the "**Order**") dismissing Count IV of Plaintiffs' FAC.

## I.    INTRODUCTION

Plaintiffs are independent artists along with their respective publishing companies and record labels. FAC, ¶ 49-58. In the FAC, Plaintiffs allege, among other things, that Defendant Uncharted Labs, Inc., d/b/a Udio.com ("**Defendant**") unfairly competed with them by developing and commercializing an artificial intelligence ("**AI**") music generation platform through the unauthorized use of Plaintiffs' voices, personas, and identities as training inputs to develop Defendant's AI technology, all while avoiding compensating Plaintiffs. Doc. 43 at 19-22. Plaintiffs' allegations rest on long-standing precedent recognizing that performers possess commercially valuable publicity interests associated with their performances, and that states may protect their residents from the unauthorized commercial exploitation of those interests. *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 573–76 (1977) (recognizing state-law protection for the "publicity value of [a] performance" and the performer's economic interest in controlling commercial exploitation of that performance). These are the precise rights Plaintiffs seek to protect with their proffered Tennessee unfair competition claim.

On December 1, 2025, Defendant filed a Motion to Dismiss. Doc. 41-2. In its Order, the Court granted, *inter alia*, the Motion with respect to Plaintiffs' Count IV.[2] Count IV of Plaintiffs' FAC was intended to assert a Tennessee common-law unfair competition claim. Although Plaintiffs inadvertently referenced the Tennessee Consumer Protection Act, the elements pled in

---

[1] "Plaintiffs" shall collectively refer to Plaintiffs, Class Members, and Subclass Members, as defined in Plaintiffs' First Amended Complaint ("**FAC**"), Doc. 37.

[2] Plaintiffs' current Motion addresses only the Court's dismissal of Count IV.

1

the Complaint are substantially the same as those for the intended unfair competition claim. Plaintiffs expressly clarified in opposition briefing that, notwithstanding the inadvertent mislabeling of the claim, Count IV was always intended to plead Tennessee common-law unfair competition. Plaintiffs requested leave to amend their FAC to conform the pleading accordingly. Doc. 43, pp. 25-7.

The Court acknowledged these facts. Order at n.1. However, rather than grant Plaintiffs' request to amend, the Court addressed both the mislabeled Tennessee Consumer Protection Act claim and the proffered Tennessee common-law unfair competition claim "in the interest of judicial efficiency" and ruled, based on the record then before it, that both claims are preempted by § 301 of the Copyright Act. *Id.* at 6. Plaintiffs contend that the Court mischaracterized Plaintiffs' proffered unfair competition claim and accordingly misapplied and overlooked controlling preemption precedent in a manner that warrants reconsideration.

As discussed herein, Plaintiffs allege that Defendant misappropriated Plaintiffs' voices, personas, and identities for use as training inputs to develop and commercialize its AI technology, thereby implicating interests qualitatively distinct from the exclusive rights protected under § 106 of the Copyright Act. Plaintiffs respectfully request that the Court reinstate Plaintiffs' proffered Tennessee common-law claim and grant Plaintiffs' request to amend their FAC.

## II.    LEGAL STANDARD

Under Local Civil Rule 6.3, reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Handwerker v. AT&T Corp.*, 285 F. Supp. 2d 331, 332 (S.D.N.Y. 2002) (citations omitted). A party moving for reconsideration "must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Id.* Local Rule 6.3 must be "narrowly construe[d] and

2

strictly appl[ied]." *Id.* Nevertheless, a motion for reconsideration is appropriate where the Court has overlooked controlling law, misapprehended the facts, or where new evidence has come to light. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992).

In evaluating dismissal under Rule 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). As the Court recognized, dismissal is appropriate only where Plaintiffs fail to state a plausible claim for relief. Order at 2. Leave to amend a complaint should ordinarily be permitted, absent undue delay, bad faith, prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely give[n] when justice so requires").

### III.    ARGUMENT

#### A.  COUNT IV WAS NOT PREEMPTED BECAUSE IT FAILED TO SATISFY THE SECOND PRONG OF THE *BRIARPATCH* TEST

Under *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004), a state-law claim is preempted only where: "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Id.* at 305. Unless both prongs are satisfied, the claim is not preempted. *Id.* Plaintiffs contend that, at a minimum, the second *Briarpatch* prong was not satisfied with respect to their proffered unfair competition claim.

Specifically, the second *Briarpatch* prong requires more than a superficial overlap between state law and copyright-based claims. Rather, a court must conduct a qualitative analysis examining whether the state-law claim contains additional elements to those protected by the Copyright Act that materially alter the nature of the action from ordinary copyright infringement.

3

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992). Preemption does not apply where a state-law claim is "predicated upon an act incorporating elements beyond mere reproduction or the like," because in such circumstances "the [federal and state] rights are not equivalent." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983), rev'd on other grounds by 471 U.S. 539 (1985). Thus, where an "extra element" is required in addition to the acts of reproduction, performance, or distribution, and that element changes the nature of the cause of action so that it is qualitatively different from copyright infringement, the claim falls outside the general scope of copyright and is not preempted. *Altai*, 982 F.2d at 716; *see also* 1 Nimmer on Copyright § 1.01[B][1][a]1-17 (same).

Here, Plaintiffs allege the following additional, non-copyright interests:

- "Feasible, voluntary, opt-in licensing models for AI training already exist, demonstrating there is no necessity to engage in wholesale, unlicensed scraping." FAC ¶ 34.

- "By reproducing … Plaintiffs' … voices – whether exactly or in substantially similar form – Udio created outputs that are likely to cause confusion regarding authorship, collaboration, sponsorship, or endorsement, thereby engaging in unfair competition." *Id*. ¶ 47.

- "The revenue obtained through the exploitation of Plaintiffs' … voices constitutes unfair competition, as Udio profited from the misappropriation of Plaintiffs' … exclusive rights and goodwill without compensation or permission." *Id*. ¶ 48.

- "By reproducing Plaintiffs'… personas, voices, trademarks, likeness, signatures, brands… without license into the infringing works, Udio unfairly competed against Plaintiffs… and was unjustly enriched." *Id*. ¶ 82.

- By copying and using their brands and voices without authorization, Udio diverted the economic value and goodwill Plaintiffs created for Udio's own commercial enterprise. *Id*. ¶ 112.

- "By using voice data to train its AI model, Udio misappropriated the value of Plaintiffs'… identities, denied them attribution…without credit or compensation." *Id*. ¶¶ 111, 135.

4

- "By reproducing these distinctive identifiers…[Udio] unfairly competed by exploit[ing] the personal and commercial identities of Plaintiffs… diverting their value into Udio's own product without attribution, license, or compensation." *Id*. ¶ 150.

- "Udio engaged in unfair and deceptive acts and practices by misappropriating Plaintiffs'… voices without consent, license, or compensation." *Id*. ¶ 402.

- "Udio's violations… were willful and knowing. Udio intentionally avoided licensing obligations, misrepresented the nature of its AI training practice, and exploited the reputations and goodwills of Tennessee artists to build its business." *Id*. ¶ 406.

- "Plaintiffs… suffered ascertainable losses, including… damage to their personal brands and reputations." *Id.* ¶ 407.

Rather than consider these additional elements (*e.g.*, alleged misappropriation of Plaintiffs' voices, professional identities, and goodwill) and conduct the qualitative analysis as Second Circuit precedent requires, the Court's assessment was limited primarily to generalized references to copyright preemption with a brief conclusion that Plaintiffs' Tennessee claim sought to vindicate the rights equivalent to the Copyright Act. Order at 7. The Court reasoned that Plaintiffs merely alleged harms flowing from copyright infringement and that Defendant's alleged infringement actions are not qualitatively distinct from copyright infringement. *Id*.

Contrary to the Court's characterization, Plaintiffs' Count IV alleged distinct identity, persona, licensing, and commercial-value interests beyond the unauthorized reproduction of copyrighted recordings. Indeed, Plaintiffs repeatedly alleged that Defendant commercially benefited from the unauthorized use of Plaintiffs' voices, personas, and identities as training inputs used to develop and commercialize its generative AI technology. *See* FAC ¶¶ 82, 106, 111–12, 135, 150, 402, 406. In ignoring these allegations, the Court overlooked precedent establishing that "[a] voice is not copyrightable" and is distinct from the reproduction, distribution, derivative-work, performance, and display rights protected under 17 U.S.C. § 106. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1100 (9th Cir. 1992) (abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). The same is true of artists' professional identities.

5

*See Midler v. Ford*, 849 F.2d 460, 463 (9th Cir. 1988) ("The singer manifests herself in the song. To impersonate her voice is to pirate her identity").

*Hamlin v. Trans-Dapt of California, Inc.*, 584 F. Supp. 2d 1050 (M.D. Tenn. 2008) expressly recognizes that unfair competition claims survive where they allege extra elements that qualitatively differ from the rights that copyright law protects. The *Hamlin* court explained:

> If an extra element is required instead of or **in addition to** the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

> *Id.* at 1060 (emphasis added).

Although the specific claims in *Hamlin* (*i.e.*, that the defendant reproduced and distributed derivative works based on the plaintiff's copyrighted work) were preempted because they were based solely on rights protected by copyright law, the court expressly recognized that "claims based on unfair competition can arise outside the context of alleged misuse of copyrighted or copyrightable materials and as such would not be preempted." *Id*. at 1061. In our case, Plaintiffs' proffered claim falls within that category because it alleges the use of Plaintiffs' voices, personas, and identities as AI training inputs, rather than infringement of Plaintiffs' copyrights. *Hamlin* is therefore at odds with the Court's conclusion that Plaintiffs' proffered Tennessee unfair competition claim is facially preempted.[3]

Courts that have already addressed Tennessee unfair competition claims recognize the evolving nature of commercially improper conduct. Those courts characterize unfair competition not as a rigid or narrowly confined tort, but as a more general tort that includes improper interference with business prospects and unfair marketplace behavior. *See Dade Int'l, Inc. v.*

---

[3] Plaintiffs' intended amendments would have further alleged that their voices, personas, and identities were extracted and utilized independently from the underlying sound recordings and manipulated in a manner designed to bring those identity-based attributes into focus for purposes of training and developing Defendant's AI technology.

*Iverson*, 9 F. Supp. 2d 858, 862 (M.D. Tenn. 1998) (unfair competition is a "general category into which a number of new torts may be placed when recognized by the courts"); *see also B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 681 (Tenn. Ct. App. 1995).[4]

Tennessee courts recognize **commercially improper** conduct and **unfair marketplace** advantage as actionable under broader unfair competition principles. Plaintiffs allege precisely this. Defendant appropriated Plaintiffs' voices, personas, and identities as training inputs to develop and commercialize its AI technology. FAC ¶¶ 82, 106, 111-12, 150.

The Court's preemption analysis did not account for the broad scope of Tennessee unfair competition law or established precedent protecting artists' voices and identities. Therefore, the Court's dismissal of Count IV was unwarranted and Plaintiffs' unfair competition claim should be reinstated.

### B. *MIDLER*, *WAITS*, AND *JACKSON* CONFIRM THAT IDENTITY AND PERSONA-BASED CLAIMS ARE DISTINCT FROM COPYRIGHT CLAIMS

While Plaintiffs' unfair competition claim is novel, the interests it seeks to protect are not. The identity-misappropriation principles that underlie Plaintiffs' proffered claim were recognized in *Midler*, 849 F.2d 460 and *Waits*, 978 F.2d 1093.

In *Midler*, Ford hired a sound-alike singer to imitate Bette Midler's voice in an advertising campaign. The Ninth Circuit held that Midler stated a viable claim because "[a] voice is as distinctive and personal as a face," emphasizing that the injury arose from the unauthorized commercial appropriation of Midler's identity rather than any ownership interest in a copyrighted

---

[4] As recognized in *Titan Cloud Software, LLC v. Moore*, 3:24-cv-00400 (M.D. Tenn. Dec 12, 2024), Tennessee common-law unfair competition is a developing doctrine. *Id.* at *4-5. That fact is significant here because Tennessee courts have never addressed whether unfair competition principles apply to generative AI systems trained on human artists' voices, personas, and identities. Given the evolving nature of Tennessee unfair competition law and the novel AI-related commercial conduct alleged here, dismissal at the pleading stage is premature and granting Plaintiffs' request to amend is warranted.

recording. *Midler*, 849 F.2d at 462–63 ("**A voice is not copyrightable** … [w]hat is put forward as protectible here is more personal than any work of authorship.") (emphasis added). As discussed in *Midler*, the legislative history of the Copyright Act indicates the express intent of Congress that "[t]he evolving common law rights of 'privacy,' 'publicity,' and trade secrets… remain unaffected [by the preemption provision] as long as the causes of action contain elements, such as an invasion of personal rights ... that are different in kind from copyright infringement." *Midler*, 849 F.2d at 462-63; *see also* H.R. Rep. No. 1476, 94th Cong., 2d Sess. 132. *Waits* reaffirmed and expanded those principles, holding that unauthorized imitation of a performer's distinctive voice for commercial advantage constitutes a distinct commercial tort protecting publicity interests separate from copyright law. *Waits*, 978 F.2d at 1100–01.

The Third, Fifth, and Ninth Circuits have recognized that persona and publicity-based interests are distinct from copyright interests, including when a plaintiff's identity or likeness is exploited to support a product that is independent from the copyrighted work itself, such as here with Defendant's AI platform. Nor are those interests subsumed by copyright law merely because the voice, persona, or identity at issue is embodied within a copyrighted sound recording. *Brown v. Ames,* 201 F.3d 654, 657-58 (5th Cir. 2000) ("the tort of misappropriation of name or likeness protects a person's persona… [a] persona does not fall within the subject matter of copyright"); *Waits*, 978 F.2d at 1099 ("[c]opyright clauses do not, by their own force or by negative implication, deprive the States of the power to adopt rules for the promotion of intellectual creation") (citation omitted); *Facenda v. N.F.L. Films, Inc.,* 542 F.3d 1007, 1027 (3d Cir. 2008) ("[a person's] voice is outside the subject matter of copyright"). In essence, Plaintiffs allege a technologically updated version of the same identity-based commercial appropriation recognized in these cases.

While the Second Circuit has yet to affirm the artists' rights established in the Third, Fifth, and Ninth Circuits, it has not expressly rejected them either. In *Jackson v. Roberts,* 972 F.3d 25

8

(2d Cir. 2020), while the court ultimately found preemption, the court expressly recognized that federal copyright law does not entirely displace state-law interests involving persona, identity, reputation, privacy, and goodwill. *Id.*, 972 F.3d at 44–45. The court specifically noted that states retain authority to regulate "unauthorized use of its citizens' personas." *Id.* at 35. *Jackson* confirms that preemption analysis requires courts to evaluate whether a state-law claim implicates substantial state interests distinct from copyright protection. *Id.* Had the Court conducted such an analysis with respect to Plaintiffs' proffered unfair competition claim, Plaintiffs believe that it would have found that it contains qualitatively different elements than those protected by copyright law and therefore is not preempted.

## C.    AMENDMENT OF PLAINTIFFS' COMPLAINT WOULD NOT HAVE BEEN FUTILE

Leave to amend a complaint should ordinarily be permitted, absent undue delay, bad faith, prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).[5] The Second Circuit has cautioned against denying leave to amend on futility grounds where plaintiffs seek to cure pleading deficiencies identified at the pleading stage. *See Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 118 (2d Cir. 2012) (vacating dismissal twice and directing that amendment be permitted, emphasizing that courts should "consider all possible amendments" before concluding amendment would be futile); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (failure to allow plaintiffs to replead violated the liberal spirit of Fed. R. Civ. P. 15). Notwithstanding this controlling precedent, the Court rejected Plaintiffs' request to amend, instead surmising what it believed Plaintiffs would have alleged in such an

---

[5] The Court makes no finding that Plaintiffs' request to amend was denied because of undue delay, bad faith, prejudice, or futility. The sole reason the Court provides for denying Plaintiffs' request was that it was in the interest of judicial efficiency. Order at 6. Yet, the Court provides no precedent for dismissing an otherwise plausible claim based solely on the interest of judicial efficiency. To the extent that the Court's "judicial efficiency" rationale was an alternative way to reference futility, as discussed *infra*, Plaintiff respectfully submits that the Court was incorrect.

amended complaint.[6] Based on that conjecture, the Court prematurely dismissed Count IV at the pleading stage. Plaintiffs contend that had the Court granted Plaintiffs' request to amend Count IV, Plaintiffs would have pled a plausible Tennessee common-law unfair competition claim for relief that was not preempted by § 301 of the Copyright Act.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reinstate Plaintiffs' Tennessee common-law unfair competition claim and permit Plaintiffs to amend its Count IV to expressly plead the Tennessee common-law unfair competition theory.

Dated: June 3, 2026

Respectfully submitted,

/s/ *Krystle Delgado*
Krystle Delgado
Arizona Bar No. 031219
**Delgado Entertainment Law, PLLC**
6803 E. Main Street, # 1116
Scottsdale, AZ 85251
krystle@delgadoentertainmentlaw.com
(*Pro Hac Vice*)

*Attorney for Plaintiffs and the Putative Class*

---

[6] The Court appears to discount the manner in which Plaintiffs requested leave to amend. Order at 6. However, Second Circuit precedent makes clear that the form of the request is immaterial. *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("[A] lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend") (citation omitted); *Loreley*, 797 F.3d at 190 ("[g]enerally, we will not deem a request for leave to amend insufficient on the basis of form alone").

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Krystle Delgado, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 6.3 that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,386 (no more than 3,500 words) as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 6.3.

/s/ Krystle Delgado
Krystle Delgado

11

## CERTIFICATE OF SERVICE

I certify that on June 3, 2026, Plaintiffs' Motion for Reconsideration was filed with the Clerk of the U.S. District Court for the Southern District of New York, using the Court's CM/ECF filing system, which will send notification of such filing to all counsel of record.

/s/ *Krystle Delgado*
Krystle Delgado