UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTICE, ET AL.,

Plaintiffs,

-against-

UNCHARTED LABS, INC., d/b/a Udio.com,

Defendant.

**ORDER AND OPINION DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION**

25 Civ. 5026 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs, a putative class of independent recording artists, filed suit against Defendant Uncharted Labs, Inc., d/b/a Udio.com ("Udio"), on June 16, 2025, alleging copyright infringement, circumvention of technological measures, and violation of the Tennessee Consumer Protection Act or Tennessee Common Law. *See* ECF No. 37. Udio engages in AI music generation services and allows users to enter prompts and generate music in various styles, including mimicking particular instruments, genres, and specific artists. *See id.* ¶¶ 114–15. Plaintiffs allege Udio trains its generative AI models on their songs, including copyrighted sound recordings, without authorization, to create competing music in the same marketplace. *See id.* ¶¶ 25, 226, 238, 353.

Defendant moved to dismiss Plaintiffs' Second, Third, and Fourth Causes of Action. *See* ECF Nos. 41, 42. As I noted in my Order and Opinion of May 21, 2026, Count Four of "[t]he First Amended Complaint initially alleged violations of the Tennessee Consumer Protection Act" ("TCPA") but "Plaintiffs' memorandum of law in opposition to Defendant's motion to dismiss claim[ed] that the citation to the TCPA was inadvertent[,]" that Count Four "was always intended to be a common-law unfair competition claim" and that it "was mistakenly

pleaded otherwise." ECF No. 52 at 1 n.1 (cleaned up; internal citations omitted). "Plaintiffs, in their memorandum of opposition, move[d] this Court for leave to amend the Complaint to conform to" their stated intention. *Id.* (citations omitted).

On May 21, 2026, I granted in part and denied in part Defendant's motion to dismiss. In the interest of judicial efficiency, I addressed both the Tennessee Consumer Protection Act claim pleaded in the Complaint and Plaintiffs' proposed Tennessee common-law unfair competition theory and held that both theories failed because the claim was preempted by the Copyright Act. *See id.* at 6–8.

On June 3, 2026, Plaintiffs moved for reconsideration of that Order as it relates to the dismissal of Count Four. *See* ECF No. 58. For the reasons outlined below, Plaintiffs' motion for reconsideration is denied.

## Legal Standard

The standard for granting a motion to reconsider is strict, and such motions will generally be denied. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Handwerker v. AT&T Corp.*, 285 F. Supp. 2d 331, 332 (S.D.N.Y. 2002) (citation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys*, 684 F.3d at 52 (citation omitted). "The purpose of Local Rule 6.3 is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10 CIV. 2463 SAS, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted).

"[R]econsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

## DISCUSSION

Plaintiffs originally pleaded Count Four under the Tennessee Consumer Protection Act. *See* ECF No. 37 ¶¶ 399–408. In their opposition to Defendant's motion to dismiss, however, Plaintiffs asserted that "Count 4 is, and was always intended to be, Subclass Members' common-law unfair competition claim, although mistakenly pled otherwise" and requested leave to amend under Rule 15(a)(2). *See* ECF No. 43 at 20; Fed. R. Civ. P. 15(a)(2). Accordingly, Plaintiffs "request[ed] amendment to correct the Count 4 citation, which otherwise relies on the same facts already plead [sic], and ensures that the absent class members' valid state-law rights are preserved." ECF No. 43 at 4. In a second request for leave to amend at the conclusion of their briefing on Count Four, Plaintiffs added, "To the extent the Court concludes that any of Plaintiffs' factual allegations require further detail, Plaintiffs respectfully request leave to supplement those allegations and cure any perceived deficiencies." *See id.* at 22.

Although a complaint may not be amended through briefing papers, *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), I considered both theories. Plaintiffs briefed their common law arguments in the motion to dismiss and represented that amendment would correct Count Four's citation while relying on the "same facts." ECF No. 43 at 4. Amendment on those terms would have been futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011).

Plaintiffs' second request for leave to amend was made in general terms. I did not conclude that any of Plaintiffs' factual allegations required further detail. To the extent Plaintiffs' general request for leave to amend was a "bare request for leave to amend" that did

not state "what additional facts Plaintiffs might allege in an amended pleading [it] does not entitle Plaintiffs to leave to amend." *Jeannot v. New York State*, 762 F. Supp. 3d 217, 235 n.7 (E.D.N.Y. 2025*), appeal withdrawn sub nom. Jeannot v. McDonald*, No. 25-314, 2025 WL 2320485 (2d Cir. July 14, 2025) (citation omitted).

Plaintiffs now contend that I mischaracterized their "proffered unfair competition claim" and consequently overlooked "controlling preemption precedent." ECF No. 58 at 2. Plaintiffs' contention is difficult to reconcile with their earlier description of their proposed amendment. Plaintiffs also asserted arguments on the merits of their proposed common-law claim in their opposition. *See id.* at 22 ("Because Plaintiffs' claim centers on Udio's unfair market advantage related to its competing AI platform, which was built using Plaintiffs' artistic labor, rather than on infringement of copyrighted works, *the common-law tort is not preempted* and states a viable independent cause of action.") (emphasis added); *see also* ECF No. 71 at 2 (Plaintiffs note that their "voice, persona, and identity argument" was raised during the motion-to-dismiss proceedings). The Court therefore did not decide an unbriefed common-law theory; it addressed the theory Plaintiffs identified and argued based on the facts they represented would remain unchanged following their proposed amendment.

Plaintiffs' present allegations are not the allegations on which the Court ruled. Nor do they simply add detail. Plaintiffs now assert that, had leave been granted, they would have alleged materially different facts. *See* ECF No. 58 at 6 n.3 ("Plaintiffs' intended amendments would have further alleged that their voices, personas, and identities were extracted and utilized independently from the underlying sound recordings and manipulated in a manner designed to bring those identity-based attributes into focus for purposes of training and developing Defendant's AI technology.").

The Court ruled on the pleadings before it and on Plaintiffs' representation that the factual basis of Count Four would remain unchanged. Plaintiffs may not now use a motion

for reconsideration to obtain a ruling in the first instance on factual allegations they neither pleaded nor identified in their original request to amend. Doing so would exceed the purpose of reconsideration. *See Analytical Surveys*, 684 F.3d at 52; *Medisim*, 2012 WL 1450420, at *1.

Plaintiffs further argue I misapplied *Briarpatch*. *See* ECF No. 58 at 3–7; *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004). As detailed in my Order and Opinion of May 21, 2026, state law claims are preempted by the Copyright Act when "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103 [(the "subject matter requirement")], and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106 [(the "equivalence" or "general scope" requirement)]." ECF No. 52 (quoting *Briarpatch,* 373 F.3d at 305).

*Melendez v. Sirius XM Radio, Inc.* is instructive. 50 F.4th 294, 297 (2d Cir. 2022). In *Melendez*, an individual who performed on *The Howard Stern Show*, filed suit after clips of his performance were used to promote that show, claiming that the advertisements violated "California common and statutory law because his identity, persona, name, and image" were exploited for commercial gain without his permission. *Melendez*, 50 F.4th at 297. As "Melendez failed to plausibly allege any use of his name or likeness that is separate from, or beyond, the rebroadcasting, in whole or in part, of the copyrightable material" his right of publicity claims were "preempted by the federal Copyright Act." *Id.* at 297. The court reasoned in part that because the complaint contained "no allegations that his name or likeness was extracted in any way to appear independently from how it originally appeared in the archival episodes, or that the excerpts were manipulated in some manner to bring his identity into focus" Melendez's allegations were "directed at the copyrighted works in which he appears … and not toward any separate use of his name or likeness." *Id.* at 304.

The same is true here. Plaintiffs did not allege the independent extraction of their voices from the relevant works either in their First Amended Complaint or during briefing on the motion to dismiss. Only now, in their motion for reconsideration, Plaintiffs, in a footnote, state their "intended amendments would have further alleged that their voices, personas, and identities were extracted and utilized independently from the underlying sound recordings and manipulated in a manner designed to bring those identity-based attributes into focus for purposes of training and developing Defendant's AI technology." ECF No. 58 at 6 n.3. Plaintiffs' materially expanded allegations, arguments, and invocation of new persuasive authorities come after the fact and are improperly raised for the first time on reconsideration. *See Analytical Surveys*, 684 F.3d at 52; *Medisim*, 2012 WL 1450420, at *1.

Furthermore, as I stated in my Order dismissing Count Four, Plaintiffs alleged negative impacts, *see* ECF No. 43 at 19–22, including those in Plaintiffs' motion for reconsideration, *see* ECF No. 58 at 4–5, that directly "resulted from Defendant's alleged infringement actions" and are therefore not, themselves, as pleaded, qualitatively distinct. ECF No. 52 at 7 (citing cases). Plaintiffs claim that their "voice, persona, and identity argument" was raised during the motion-to-dismiss proceedings. ECF No. 71 at 2. That may be true, but Plaintiffs' arguments now are fundamentally different. The gravamen of Plaintiffs' unfair competition claim focused on their creative works and on Udio's use of their artistic labor to obtain a competitive advantage in the music industry. ECF No. 43 at 20 (emphasis added); *see also In re Jackson*, 972 F.3d 25, 50 (2d Cir. 2020). The Second Circuit takes a "restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Briarpatch,* 373 F.3d at 306.

The Court does not foreclose the possibility that an AI platform trained on an artist's vocal characteristics could, under appropriate circumstances, implicate identity interests

distinct from copyright claims. However, as Plaintiffs did not adequately plead their claim on this theory, they may not do so for the first time in a motion for reconsideration.

Nothing in this Order precludes Plaintiffs from seeking leave to amend by an appropriate motion, with the inclusion of a proposed amended complaint.[1] *See Union Carbide Corp. v. Siemens Westinghouse Power Corp.*, No. 99 Civ. 12003 (LMM), 2002 WL 31387269, at *2 (S.D.N.Y. Oct. 23, 2002). Should Plaintiffs wish to amend their complaint on the basis outlined in their motion for reconsideration, they may file a motion to do so within 30 days of the issuance of this Order.

## Conclusion

For the reasons stated above, Plaintiffs' motion for reconsideration is denied. As noted, should Plaintiffs wish to amend their complaint on the basis outlined in their motion for reconsideration, they may file a motion to do so within 30 days of the issuance of this Order.

The parties will appear at a telephonic status conference to be held on October 16, 2026, at 10:00 a.m. Dial-in information will be made available in advance.

The Clerk shall terminate ECF No. 58.

SO ORDERED.

Dated: August 17, 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

[1] The Court expresses no view on whether leave to amend would be granted or if Plaintiffs' new facts would allow their claim to survive preemption.